985 F.2d 554
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Harold Green MCKINNON, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Peggy Arlene BARNES, Defendant-Appellant.
 Nos. 92-5177, 92-5178.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 3, 1992
Decided: February 1, 1993
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Fayetteville. W. Earl Britt, District Judge. (CR-91-56)
 ARGUED: Ronald Douglas McSwain, Boose & McSwain, Fayetteville, North Carolina, for Appellant Barnes; Ronnie Monroe Mitchell, Harris, Mitchell, Hancox & Vanstory, Fayetteville, North Carolina, for Appellant McKinnon.
 John Eric Evenson, II, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 ON BRIEF: Kathleen G. Sumner, Harris, Mitchell, Hancox & Vanstory, Fayetteville, North Carolina, for Appellant McKinnon.
 Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 Affirmed.
 Before RUSSELL and HALL, Circuit Judges, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Harold Green McKinnon and Peggy Arlene Barnes were convicted by a jury of (1) maintaining a place for the distribution of cocaine base ("crack") in violation of 21 U.S.C. § 856(a)(1), (2) possessing crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and (3) using a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c). Both appeal; we reject their numerous arguments and affirm.
 
 I.
 
 2
 McKinnon and Barnes ran a crack house at 1360 Thelbert Drive in Fayetteville, North Carolina. On September 27, 1990, police officers searched the house and discovered a hornets' nest of drug-related activity.
 
 
 3
 When the officers entered the house, McKinnon ran from the master bedroom and attempted to flush a 17.3-gram chunk of crack down the toilet.[1] Barnes was found standing in the master bedroom. On the bed, the officers found a loaded revolver, small plastic bags, and over $1,000 in cash; on the dresser, a semi-automatic pistol, two magazines for the gun, and over a thousand small plastic bags; behind the bedroom door, an assault shotgun; and on the floor, over $900 in cash. The search also uncovered three small measuring scales.
 
 
 4
 McKinnon and Barnes were charged with state-law drug trafficking violations; they posted bond and were released.
 
 
 5
 On February 14, 1991, police searched the house a second time. Although McKinnon was not home, Barnes was discovered standing outside the bathroom holding a semi-automatic pistol. When Barnes refused to drop the weapon, officers pinned her against the wall and took it from her. Officers found a can containing 2.3 grams of crack on top of the toilet, a .22 caliber automatic pistol on the nightstand, and a .357 caliber pistol in McKinnon's car.
 
 
 6
 McKinnon and Barnes were arrested a second time and were later indicted for violating federal drug statutes. They pleaded not guilty. At trial, the government introduced the following evidence: (1) the drugs seized during both searches; (2) the weapons seized during the first search; (3) testimony of Russell Butler, who had purchased cocaine from McKinnon and Barnes from December 1989 through February 1991; and (4) testimony from police surveillance teams who had seen a stream of individuals visit the house, each for very a short period of time. Both defendants were convicted of all three counts.
 
 
 7
 At the sentencing hearing, the court found that the defendants had conspired to distribute 519.6 grams of crack. McKinnon was sentenced to 322 months of imprisonment and Barnes was sentenced to 248 months of imprisonment. Both sentences are to be followed by 60 months of supervised release. Barnes and McKinnon now appeal.
 
 II.
 
 8
 A.Sufficiency of the evidence.
 
 
 9
 Appellants argue that there was insufficient evidence to support their convictions under 18 U.S.C. § 924(c) (using a firearm during a drug crime). The jury's verdict must be affirmed if the evidence, viewed in the light most favorable to the government, would permit any rational trier of fact to find the elements of the crime proved beyond a reasonable doubt. United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir.), cert. denied, 111 S.Ct. 955 (1991).
 
 
 10
 During the first house search, the police found Barnes in the master bedroom and saw McKinnon running from the master bedroom into the bathroom. The master bedroom contained a .357 caliber magnum pistol, an assault shotgun, and a .45 caliber semi-automatic handgun.
 
 
 11
 Barnes argues that there was insufficient evidence to prove that she owned, attempted to use, or was able to use these weapons. We reject Barnes' arguments. First, ability to use the weapon and ownership are not essential elements of the offense. 18 U.S.C.s 924(c)(1); United States v. Paz, 927 F.2d 176, 179 (4th Cir. 1991). Second, the word "use" in the statute is very liberally construed. The firearm does not have to be fired or brandished; it is enough if its mere presence facilitated the crime by protecting the defendants. Id., (a gun underneath a mattress was "used" in furtherance of a drug crime); United States v. Brockington, 849 F.2d 872, 876 (4th Cir. 1988) ("it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used."). We conclude that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Barnes used a gun during a drug crime, and, therefore, her conviction must be upheld.
 
 
 12
 We also conclude that the evidence supported McKinnon's conviction. When the police entered the house, they saw McKinnon running out of the bedroom. His presence in the master bedroom, where three guns and ammunition were found, provided ample evidence to support the jury's verdict.
 
 
 13
 B.Limiting instruction on the firearms charge.
 
 
 14
 The defendants were charged with possessing a firearm "on or about September 27, 1990," the date of the first search. During the trial, the government introduced testimony describing Barnes' disarmament during the second search as evidence on the first drug count (maintaining a place for the distribution of crack). The defendants requested, but the district court refused, a limiting instruction that Barnes' conduct during the second search could not be considered as evidence against either defendant on the firearms count.
 
 
 15
 We need not decide whether a limiting instruction was necessary. All of the elements of the firearms counts were clearly established by the admission of the guns seized in the first search. Thus, even if a limiting instruction was required, its omission would be harmless error.
 
 
 16
 C.Drug quantities.
 
 
 17
 Both defendants challenge the district court's finding that they distributed 519.6 grams of crack cocaine.[2] The district court's calculation of the quantity of drugs for sentencing purposes is a factual determination that we review for clear error. United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992).
 
 
 18
 The district court's 519.6 gram finding was based upon the 19.6 grams seized during the house searches and Butler's testimony that he purchased 500 grams of crack from the defendants during the course of the conspiracy. Although appellants argue vociferously that Butler's testimony was untrustworthy, we note that it was supported by police surveillance indicating a high degree of traffic at the crack house and by the numerous citizen complaints.[3] We do not believe the district court's ruling is clearly erroneous; therefore, we affirm.
 
 
 19
 D.Was Barnes a minimal participant?
 
 
 20
 Barnes argues that her subsidiary role in the conspiracy required the district court to make a mitigatory role adjustment to her baseoffense level. See U.S.S.G. § 3B1.2 ("minimal participant" status reduces offense level by four points; "minor participant" status reduces offense level by two points). The district court's factual determination of the defendant's role in the offense will not be overturned on appeal unless it is clearly erroneous. United States v. Campbell, 935 F.2d 39, 46 (4th Cir.), cert. denied, 112 S.Ct. 348 (1991).
 
 
 21
 The district court's determination that Barnes played a substantial role in the conspiracy is not clearly erroneous. The crack house was in operation for over a year, and the district court determined that Barnes was "well aware of the scope of drug dealing." Barnes was not a casual visitor; she lived at the residence from which the cocaine was dealt. When McKinnon was home, she assisted him in making the cocaine sales; when McKinnon was away, she sold the cocaine herself. Although Barnes may have sold less cocaine than McKinnon, the district court's finding that her role was neither"minimal" nor "minor" was not clearly erroneous.[4]
 
 
 22
 E.Calculation of McKinnon's criminal history.
 
 
 23
 In 1985, McKinnon was convicted of "willful and wanton injury to real property," N.C. Gen. Stat. § 14-127 (1986), and received a suspended sentence of 8 to 12 months. Based upon this conviction, the district court increased McKinnon's "criminal history score" by one point.[5] See U.S.S.G.s 4A1.1 (c); § 4A1.2(a)(3). McKinnon argues that this prior conviction was obtained while he was uncounseled. He asks us to rule that Baldasar v. Illinois, 446 U.S. 222 (1980), proscribes the use (under U.S.S.G. § 4A1.2) of a prior uncounseled misdemeanor conviction to enhance a defendant's sentence upon a subsequent conviction.[6] However, because we conclude that McKinnon's unsubstantiated assertions failed to demonstrate that his conviction was uncounseled, it is unnecessary for us to address the potential conflict between Baldasar and U.S.S.G. § 4A1.2.
 
 
 24
 Relying on the "presumption of regularity" that attaches to final judgments, the guidelines place the burden of demonstrating a conviction's invalidity upon the defendant. U.S.S.G. § 4A1.2, comment. (n. 6) ("[C]onvictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted."); United States v. Davenport, 884 F.2d 121, 124 (4th Cir. 1989) (guidelines place burden of proving conviction's invalidity on the defendant). In an analogous context the Supreme Court has held that placing the burden of proof at sentencing on the defendant does not offend due process. Parke v. Raley, 113 S.Ct. 517, 524 (1992) ("[T]he presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant.") (citations omitted). McKinnon simply failed to overcome this presumption and, therefore, his sentence must be upheld.
 
 
 25
 F.Investigator's testimony.
 
 
 26
 Investigator Eaker testified that the small plastic bags and balancing beam scales like those found at the defendants' residence were commonly used to sell narcotics. The defendants complain that the district court erred by allowing Eaker to give "expert" testimony without having been formally qualified under Fed. R. Evid. 702. The district court's decision to allow Eaker's testimony is reviewed for abuse of discretion.
 
 
 27
 We conclude that the government's failure to formally qualify Eaker as an expert witness does not require the reversal of the convictions. The government laid a foundation for Eaker's opinion by demonstrating that he had experience in narcotics investigations and was familiar with the packaging of controlled substances. It was merely a formality that he was not deemed "qualified" by the court. United States v. Vastola, 899 F.2d 211, 234-35 (3d Cir.) ("Rule 702 does not condition the admissibility of expert testimony on the proponent's incantation of any particular phrases."), vacated on other grounds, 497 U.S. 1001 (1990).
 
 
 28
 G.Variance from the indictment.
 
 
 29
 McKinnon argues that his conviction must be reversed because the evidence admitted at trial varied from the facts alleged in the indictment. Count One of the indictment charged McKinnon with maintaining a crack house from "from on or about January 1990, up to and including on or about February 1991, the exact dates being unknown to the Grand Jury." Butler, the government's informant, testified that he purchased crack at McKinnon's house from November or December 1989 until February 1991. Thus, Butler's testimony was that the offense lasted one or two months longer than the indictment charged.
 
 
 30
 Only a material variance requires reversal:
 
 
 31
 The true inquiry is "whether there has been such variance as to 'affect substantive rights' of the accused." In reaching this determination, the primary consideration is the role of the indictment in informing the defendant of the charges in order that he may prepare his defense and in protecting the defendant against another prosecution for the same conduct.
 
 
 32
 United States v. Morrow, 925 F.2d 779, 781 (4th Cir. 1991) quoting United States v. Holt, 529 F.2d 981 (4th Cir. 1975). Because McKinnon failed to demonstrate that this slight variance affected his trial preparation or strategy, we conclude that it was immaterial. See United States v. Nersesian, 824 F.2d 1294, 1323 (2d Cir.) (1-2 month variation was immaterial), cert. denied, 484 U.S. 958 (1987); United States v. Laykin, 886 F.2d 1534, 1542 (9th Cir. 1989) (no prejudice from four month variance in conspiracy's starting date), cert. denied, 110 S.Ct. 2586 (1990).
 
 
 33
 H.Ineffectiveness of counsel.
 
 
 34
 McKinnon alleges that his trial counsel was ineffective. This Court has stated that claims of ineffective assistance of counsel are usually better addressed in habeas proceedings rather than on direct review. United States v. DeFusco, 949 F.2d 114, 120 (4th Cir. 1991), cert. denied, 112 S.Ct. 1703 (1992). By deferring consideration, we allow McKinnon the opportunity to establish an adequate record for resolution of his claim. Without a full record before us,"it is impossible to make a reasoned judgment as to whether or not representation was ineffectual." United States v. Lurz, 666 F.2d 69, 78 (4th Cir. 1981), cert. denied, 459 U.S. 843 (1982).
 
 III.
 
 35
 For the aforementioned reasons, the district court's decision is affirmed.
 
 AFFIRMED
 
 
 [1]
 The piece of crack was too large to be flushed and was recovered from the toilet by the officers
 
 
 [2]
 We reject McKinnon's argument that the government's burden of proof at sentencing should be "clear and convincing" evidence. This Court has already determined that the "preponderance of the evidence" standard applies to factual questions at sentencing. United States v. Urrego-Linares, 879 F.2d 1234, 1237-38 (4th Cir.), cert. denied, 110 S.Ct. 346 (1989); United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990); United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992)
 
 
 [3]
 During the sentencing hearing the district court stated "if anything, I think the Government's estimate is conservative."
 
 
 [4]
 We also reject Barnes' argument that her "limited role" required the court to sentence her on the basis of a lesser quantity of drugs than that ascribed to the total conspiracy
 
 
 [5]
 We note that even if the "injury to real property" conviction is removed from McKinnon's criminal history score, he will still have two criminal history points and thus remain within criminal history category II. See Sentencing Table at U.S.S.G. § 5A
 
 
 [6]
 Interpreting Baldasar has proved to be a Sisyphean task. The opinion contains three separate concurrences none of which garnered the support of a majority of Justices. Several Circuits have reacted to Baldasar 's fractured opinion by largely limiting it to its facts. See United States v. Castro-Vega, 945 F.2d 496, 499-500 (2d Cir. 1991); United States v. Eckford, 910 F.2d 216, 218-20 & n.8 (5th Cir. 1990); Schindler v. Clerk of Circuit Court, 715 F.2d 341, 345 (7th Cir. 1983). We decline to address Baldasar 's current viability