**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rafael Antonia PAZ,
Defendant–Appellant.**

**No. 90–5307.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1991.

Decided March 4, 1991.

David F. Tamer, argued (Thomas Jeffery Keith, on brief), Winston–Salem, N.C., for defendant-appellant.

Paul Alexander Weinman, Asst. U.S. Atty., argued (Robert H. Edmunds, Jr., U.S. Atty. and David B. Smith, Asst. U.S. Atty., Sr. Litigation Counsel, on brief), Greensboro, N.C., for plaintiff-appellee.

Before SPROUSE and WILKINS, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

Rafael Antonia Paz pled guilty to four counts of drug trafficking and was found guilty by the district court on a fifth count—the use of a firearm in relation to drug trafficking. On appeal, Paz alleges a host of errors concerning his conviction on the firearm count and his sentencing. We affirm.

## I

On May 31, 1989, the Guilford County Sheriff's Department executed a valid search warrant of a residence located in Greensboro, North Carolina. At the time of the search, four people were in the house. Paz and another Hispanic male were found in one bedroom, later determined to be Paz's bedroom. A bag containing 10.5 grams of cocaine and another bag containing 55.5 grams of cocaine base ("crack") were found in Paz's bedroom, as well as $1,800 in a false spray can. Desiring to cooperate, Paz told police that there was a gun underneath the mattress. The police then retrieved a 9 mm. pistol from underneath the mattress. Additionally, police uncovered a bag containing 429.6 grams of cocaine from under the house, another bag containing 189.5 grams of cocaine from an upstairs kitchen, $6,500 from another bedroom and a bag containing glassine bags, commonly used to package drugs. Police subsequently arrested all four persons in the house.

On June 26, 1989, the United States grand jury for the Middle District of North Carolina returned a five-count indictment against Paz and the three other persons arrested at the Greensboro residence. Counts One through Four charged Paz and his co-defendants with conspiracy to possess quantities of cocaine base with intent

to manufacture, 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); possession of cocaine base with intent to distribute, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); possession of cocaine hydrochloride with intent to manufacture cocaine base, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and maintenance of a residence for purposes of manufacturing cocaine base, 21 U.S.C. §§ 856(a)(1) and (b). Count Five charged Paz with the use of a firearm during and in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1).

Paz pled guilty to the first four counts, but not guilty to Count Five.[1] After a bench trial, the district court found Paz guilty on Count Five. The district court subsequently sentenced Paz to a term of imprisonment of 210 months on Counts One through Four. In addition, the court imposed a sentence of five years on Count Five, to run consecutive to the sentence imposed for the first four counts.

## II

On appeal, Paz contends that the district court made several errors in his conviction and sentencing. First, Paz contends that there was insufficient evidence to convict him of a violation of 18 U.S.C. § 924(c)(1). Section 924(c)(1) states in pertinent part:

> Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....

Paz contends that the government offered no evidence that he owned the gun or that he "used" the gun "during and in relation to" the drug trafficking crimes to which he pled guilty. Moreover, Paz contends that the inaccessibility of the gun, placed under the mattress, demonstrates that he did not use the gun in relation to the crime.

■ A verdict of guilty, of course, "must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *Glasser v.*

---

**1.** Witnesses testified that Paz and others "cooked" crack at the Greensboro, North Carolina residence, departed at night with cans which had false bottoms containing packages of

crack, sold the crack and then returned to the Greensboro residence to divide the spoils of their unlawful activity.

*United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Here, we find substantial evidence to support the district court's conclusion. Ownership is not essential to the possession and use of a firearm. Moreover, constructive possession of firearms in relation to a drug transaction is sufficient to establish "use." *See United States v. Matra,* 841 F.2d 837, 841–42 (8th Cir.1988). As we stated in *United States v. Brockington,* 849 F.2d 872 (4th Cir.1988), the weapon need not be brandished or displayed. Rather, "it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used." *Id.* at 876. Here, the gun was present and accessible, even though under a mattress, and there is little question that its presence would help facilitate the success of the criminal undertaking.

■ Second, Paz contends that the district court committed reversible error when it refused to permit him to testify. After both parties had presented proof, rested, and made closing arguments, the district court found the defendant guilty on Count Five and set a date for sentencing. The court then ordered defendant returned to custody, after which defendant indicated through an interpreter that he wanted to testify in his own behalf. In response, the district court stated:

> Well, the case is over now; and he didn't call it to my attention. I asked him this morning when I was taking his plea ["]Is there anything else he would like to say or do,["] and it didn't come to my attention at that time.

A bench conference subsequently ensued off the record.

The reopening of a criminal case after the close of evidence is within the discretion of the trial judge. *See United States v. Walker,* 772 F.2d 1172, 1177 (5th Cir. 1985); *United States v. Molinares,* 700 F.2d 647, 652 (11th Cir.1983). In the instant case, Paz had been provided an opportunity to speak and chose not to. The trial had concluded and a verdict reached; only then did Paz request to testify. Moreover, the record fails to indicate any "reasonable explanation" for Paz's failure to present his testimony during his case-in-chief. Based on these facts, we are not prepared to say that the district court abused its discretion in refusing to reopen the trial after a verdict had been decided.

■ Next, Paz contends that the district court erred in shifting the burden of proof to Paz to prove that he did not "use" a firearm in relation to drug trafficking. In reaching its decision that Paz had violated § 924(c)(1), the district court stated that: "I have considered everything you have indicated with reference to whether or not the defendant is guilty. I cannot see any factual basis raised by you to amount to a reasonable doubt, and for that reason I have found him guilty." Paz argues that this statement demonstrates that the court placed the burden of proof on him to prove that he had not used a firearm in relation to drug trafficking and, consequently, Paz contends that he was denied his constitutional right to a presumption of innocence. We disagree.

The government had the burden of proof to establish beyond a reasonable doubt that Paz knowingly used a firearm "during and in relation to the commission of a drug trafficking crime." Paz admitted knowledge of the gun; Paz pled guilty to drug trafficking charges committed on the day of his arrest; and the government argued that constructive possession of a firearm in relation to a drug trafficking crime is sufficient to establish "use." Paz attempted to rebut the government's evidence with testimony by a witness who stated that he had previously seen another person in possession of the gun and at no time had he ever seen Paz carry a weapon, let alone that particular gun.

The district court's statement merely reflects its conclusion that the government had successfully established the elements of a violation of 18 U.S.C. § 924(c)(1) beyond a reasonable doubt and that Paz's rebuttal evidence did not create any reasonable doubt. This analysis and conclusion did not, in any way, shift the burden of proof to the defendant.

■ Fourth, Paz argues that the district court wrongfully concluded that he was a manager of the drug enterprise. Paz's presentence investigation report recommended a three-level enhancement on the grounds that Paz was a manager of a criminal activity that involved five or more participants. Sentencing Guideline 3B1.1(b) specifically states that "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." U.S.S.G. § 3B1.1(b). Prior to sentencing, Paz objected to the managerial classification, arguing that he was a courier, not a manager, and that others who had not been indicted in the case were the true managers of the drug activity. Paz advanced these same contentions when he testified at his sentencing.

However, evidence indicated that Paz controlled the money, drug products and residences where the drug trafficking was performed. From this evidence, the district court concluded that Paz was a manager of the enterprise. We are not persuaded to say that this factual determination was clearly erroneous.

■ Finally, Paz contends that the district court erred in the calculation of his base offense level. A chemist testified that 100 grams of cocaine would yield approximately 88 grams of cocaine base ("crack"). The district court calculated the amount of crack that would have been manufactured from the cocaine found in the house by multiplying the grams of cocaine by approximately 88%. The court thus concluded that Paz possessed or conspired to manufacture approximately 618 grams of crack. This figure produced a base offense level of 36. Paz never objected to this calculation at trial; however, on appeal, Paz contends that the district court should have used a conversion rate of 100 grams of cocaine to one gram of crack, the ratio provided in the Drug Equivalency Tables of the Sentencing Guidelines. *See* U.S.S.G. § 2D1.1, comment. (n. 10). The use of the tables would have resulted in a smaller sum of crack, which in turn would have produced a lower base offense level of 32.

Paz's argument fails because it misapprehends a proper application of the Sentencing Guidelines. Where, as here, a defendant is convicted of conspiracy to manufacture crack, but the chemical seized was cocaine, the district court must undertake a two-step process.[2] First, it must approximate the total quantity of crack that could be manufactured from the seized cocaine, considering the quantity of cocaine and other relevant evidence. *See* U.S.S.G. § 2D1.4, comment. (n. 2) ("Where ... the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance."). *See also* U.S.S.G. § 2D1.1, comment. (n. 12), referencing the former. Here, the district court properly approximated 618 grams of crack.

Once a total quantity of crack is estimated, the district court must then apply the quantity of crack to the Drug Quantity Table contained in § 2D1.1(c) to determine a base offense level. Here, the district court applied the approximated quantity of crack to the Drug Quantity Table and properly arrived at a base offense level of 36.

Contrary to Paz's assertion, the Drug Equivalency Tables contained in note 10 of the commentary to § 2D1.1 are not manufacturing conversion ratios intended to reflect the amount of controlled substance that can be manufactured from an ingredient substance, such as the amount of crack that can be manufactured from a given amount of cocaine. Rather, the Drug Equivalency Tables "provide a means for combining differing controlled substances to obtain a single offense level." U.S.S.G. § 2D1.1, comment. (n. 10). Since Paz was convicted of conspiracy to manufacture only one substance—crack—the Drug Equivalency Tables have no application here, and we conclude that the district court properly calculated the amount of

---

**2.** Under 21 U.S.C. §§ 841 and 846, and U.S.S.G. §§ 2D1.1 and 2D1.4, attempted/conspired conduct is punished the same as completed conduct.

crack which the manufacturing process would have produced.

In view of the above, the judgment of the district court is affirmed.

AFFIRMED.