16 F.3d 413
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bryon JONES, a/k/a Carl Lee, a/k/a "B", Defendant-Appellant.
 No. 93-5344.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 29, 1993.
Decided: Jan. 14, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte; Robert D. Potter, District Judge.
 Randolph Marshall Lee, Law Office of Randolph M. Lee, Charlotte, NC, for appellant.
 Robert Jack Higdon, Jr., Asst. U.S. Atty., Charlotte, NC, for appellee.
 Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.
 W.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, RUSSELL, Circuit Judge, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal presents three issues arising out of Bryon Jones' (the "Appellant") drug trafficking convictions: (1) whether the government impermissibly failed to disclose favorable, material evidence to the Appellant prior to trial; (2) whether the government introduced sufficient evidence to establish that the Appellant used firearms during and in relation to his drug trafficking activity; (3) whether the government presented sufficient evidence to establish that the Appellant had the "intent to distribute" cocaine. Because we find the Appellant's assignments of error to be without merit, we affirm the judgment of the district court.
 
 
 2
 * On the morning of April 30, 1993, pursuant to several arrest warrants, the Charlotte North Carolina Police Department arrested the Appellant at his apartment in connection with several assaults in which he was a suspect. The Appellant did not allow the police to search his apartment incident to his arrest.
 
 
 3
 Later that same day, the police applied for and obtained a search warrant to search the Appellant's apartment for guns and ammunition related to the assaults. The search warrant application recited the following facts:
 
 
 4
 -- On 4/4/92 Margerald Jermaine Boyd was shot with a 9mm weapon at the North Park Mall in Charlotte by a man he identified out of a photo line-up as the[Appellant];
 
 
 5
 -- On 2/22/92 Xavius Daniels was abducted at gunpoint (a 9mm weapon) by a man he identified out of a photo line-up as the [Appellant];--On 2/26/92 Xavius Daniels, Terry West and Darryl Daniels were chased, run off the road, and shot at with a 9mm weapon by a man they identified out of a photo line-up as the [Appellant];
 
 
 6
 -- [Appellant] was identified as living at 10535 Paces Avenue, Apt. # 828, and was the signatory on the lease for that apartment;
 
 
 7
 -- Five warrants for the arrest of the [Appellant] had been issued, and were served at 8:15 a.m. on April 30, 1992.
 
 
 8
 Based upon these facts, a magistrate issued a warrant authorizing police to search the Appellant's apartment for "firearms, ammunition, bullet casings, and spent projectiles."
 
 
 9
 When the police executed the search warrant later that same day, they found 14 grams of crack cocaine and nine boxes of plastic baggies in the Appellant's apartment. After finding the drugs, the police also found two assault rifles, two 9mm weapons, and a large quantity of ammunition for the guns in the apartment. During their search, police seized personal financial papers, car titles and cash.
 
 
 10
 On June 4, 1992, a federal grand jury in the Western District of North Carolina indicted the Appellant, charging him with one count of Conspiracy to Possess and Distribute Cocaine in violation of 21 U.S.C. Sec. 841(a)(1), one count of Possession of Cocaine with the Intent to Distribute in violation of 21 U.S.C. Sec. 846, and four counts of Use of a Firearm in Relation to a Drug Trafficking Offense in violation of 18 U.S.C. Sec. 924(c)(1).
 
 
 11
 In response to the indictment, the Appellant filed a motion to suppress the evidence of the crack cocaine seized from his apartment. The motion alleged that the terms of the search warrant used to discover these items were overly broad. The Appellant contended that the warrant had improperly listed small items, such as shell casings and spent projectiles, to enable police to search in small crevices where they believed they might locate drugs.
 
 
 12
 Magistrate Paul B. Taylor held a suppression hearing on August 11, 1992 to determine the propriety of the warrant. At that hearing, Investigator Maxfield of the Charlotte Police Department testified that the Appellant had been the suspect in various assaults involving gun shots that took place in Charlotte in 1992. Maxfield testified that the police had recovered spent shell casings from the scenes of these assaults.
 
 
 13
 Maxfield testified that he executed the search warrant at the Appellant's apartment on April 30, 1992 together with Officers Peterson and Neely. Maxfield stated that during the search,"[t]here was a quantity of cocaine found by Officer Peterson in the kitchen area .... to the best of my recollection, I believe he found it in a cabinet in the kitchen." In response to questioning from Magistrate Taylor concerning the precise location where the crack was located, Maxfield replied that he was unable, "to testify to that ... because I didn't find it.... Officer Peterson is the one that found the cocaine."
 
 
 14
 Maxfield testified that the officers found guns and ammunition during their search, but did not find any spent casings. Maxfield further testified that he was not looking for drugs when he searched the Appellant's apartment. Finally, although Maxfield admitted that he had been aware that the Appellant had been a suspect in a drug trafficking investigation, Maxfield himself had not been involved in any drug investigations at the time the search warrant had been issued.
 
 
 15
 Magistrate Taylor issued a Memorandum and Recommendation on September 8, 1992 denying the suppression motion. In his opinion, Taylor wrote:
 
 
 16
 The warrant application established probable cause to believe that the Defendant had been involved in three violent incidents involving 9mm weapons, and had shot at four people ... [n]ine millimeter ammunition, shell casings and projectiles would clearly constitute evidence that might link the defendant to these shootings ... because the ammunition and shell casings would constitute evidence of the crimes described in the warrant application, it was reasonable for the officer to request authority to search for such items. Accordingly, the motion to suppress should be denied. Moreover, although Officer Maxfield could only recall that the crack cocaine had been found in a kitchen cabinet, there is no evidence to suggest that the crack was found in a container that was too small to conceal weapons. Accordingly, the argument that the officers improperly sought permission to search small places must be dismissed on the further reasoning that there is no evidence that the discovery of the drugs was proximately caused by the alleged improper search request. (citation omitted).
 
 
 17
 The District Court adopted Magistrate Taylor's Memorandum and Recommendation.
 
 
 18
 On September 10, 1992 a superseding Bill of Indictment was filed against the Appellant. The Superseding Indictment included six counts: one count each of violating 21 U.S.C. Secs. 846 and 841(a)(1) and four counts of violating 18 U.S.C. Sec. 924(c)(1). The Appellant was tried before the Honorable Robert D. Potter, United States District Judge on February 1-3, 1993.
 
 
 19
 At trial, the government offered substantial evidence of the Appellant's armed drug trafficking activities. Derrick Withers, who testified that he had assisted the Appellant in the preparation and distribution of large quantities of crack cocaine, described the Appellant's drug dealing activities in Charlotte's Terrybrook Avenue neighborhood. Withers testified that he had observed the Appellant with large amounts of crack cocaine. In his testimony, Withers described how he came to work with the Appellant, how their drug distribution system developed, and the way in which they distributed the crack cocaine. Withers further described travelling with the Appellant around Charlotte for the purpose of delivering crack to various distributors. During the trips, the Appellant would often carry a firearm.
 
 
 20
 Christine Whitaker also distributed crack cocaine in the Terrybrook Avenue area with the Appellant. Whitaker testified that she permitted the Appellant and Withers to distribute crack from her home. Whitaker also stated she stored the Appellant's firearms and drugs in her home. Whitaker described a shootout between the Appellant and some men who threatened her.
 
 
 21
 The Appellant's girlfriend LaShanda Dean also testified for the government. Dean testified that she accompanied the Appellant on several trips to New York. Dean observed that the Appellant possessed crack cocaine and cash during those trips.
 
 
 22
 At trial, Officers Maxfield, Neely, Peterson, and Erdmanczyk of the Charlotte Police each described their roles in the search of the Appellant's apartment. Officer Peterson testified that he found the following items in the Appellant's kitchen: nine boxes of sandwich bags, two chrome scales similar to those used by individuals involved in drug trafficking, a bag containing a white substance, later determined to be crack cocaine. Peterson described how he found the crack cocaine as follows:
 
 
 23
 When I got all done with the lower half of the kitchen and everything that was at eye level, I made one more sweep of the kitchen and then decided--I looked up and the cupboards did not go all the way to the ceiling. In other words, there was a space between the ceiling and the top of the cupboards. So what I did, I stepped up on top of the shelf, straddled both sides of the kitchen and started looking along the right side of the kitchen on top of the shelves. That side was clear, nothing but dust up there. When I glanced over to the left side, I could see the top of a plastic bag sticking up and what appeared to be a white, almost cake-like, it would appear like peanut brittle, but it's much lighter in color substance, sitting up in a plastic bag on top.
 
 
 24
 Officer Erdmanczyk testified that he searched a utility closet between the den. and the master bedroom where the Appellant had been found. Erdmanczyk found a long rifle and a duffel bag containing other guns and ammunition in the back of the closet behind several large trash bags full of coats and tennis shoes. Erdmanczyk further testified in response to defense counsel's questioning, that he believed that the guns had been fired prior to being discovered.
 
 
 25
 At the conclusion of the trial, the Appellant was found guilty on all counts, and on March 31, 1993, was sentenced to a term of 420 months. This appeal followed.
 
 II
 Government's Failure to Disclose
 
 26
 In his first assignment of error, the Appellant argues that the government failed to disclose favorable, material evidence when the government failed to state the precise location where the crack cocaine had been found in the Appellant's apartment. The Appellant contends that because Officer Peterson failed to appear at the suppression hearing and because Peterson later testified that he found the cocaine above the cabinet rather than inside of it, his conviction should be reversed.
 
 
 27
 The Appellant believes that the outcome of the suppression hearing would have been different if Officer Peterson had testified that the cocaine was found above the kitchen cabinets instead of inside the cabinets as Officer Maxfield had recalled at the suppression hearing. He cites the language of Magistrate Taylor's September 30, 1992 order that "there is no evidence to suggest that the crack was found in a container that was too small to conceal weapons ... there is no evidence that the discovery of the drugs was proximately caused by the improper search request" in support of his position that the drugs would have been suppressed had Taylor known that the drugs had been found above the kitchen cabinets.
 
 
 28
 Alternatively, the Appellant contends that even if the disclosure of the precise location of the drugs would not have changed the outcome of the suppression hearing, he was still prejudiced by the government's failure to disclose the location of the drugs before trial. The Appellant argues that he would have pursued a different trial strategy if the government had disclosed this information.
 
 
 29
 We review the district court's factual findings concerning suppression under the clearly erroneous standard, and we review the district court's application of law to those facts de novo. United States v. Alexander, 835 F.2d 1406, 1408 (11th Cir.1988). After reviewing the record in this manner, we find the Appellant's arguments to be without merit.
 
 
 30
 In effect, the Appellant is charging the government with a violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. In Brady, the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment ..." Id. at 87. Brady makes clear that the prosecution has an affirmative duty to produce, at the appropriate time, materially favorable evidence that is requested by a criminal defendant.
 
 
 31
 In United States v. Agurs, 427 U.S. 97, 104 (1976), the Court explained the materiality requirement as follows:"A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that suppressed evidence might have affected the outcome of the trial." Similarly, in United States v. Bagley, 473 U.S. 667, 682 (1985), the Court held that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." The Agurs Court further explained that where a defendant fails to request, or only generally requests, exculpatory evidence, reversal of a conviction is appropriate only if the undisclosed evidence "creates a reasonable doubt that did not otherwise exist." Augurs, 427 U.S. at 112. See also United States v. Sutton, 542 F.2d 1239, 1242-43 (4th Cir.1976).
 
 
 32
 The Appellant has failed to demonstrate that the government withheld material evidence from the Appellant in violation of Brady. In the present case, the government maintained an open file so that relevant material was available to the Appellant's attorney. Furthermore, the record on appeal does not indicate that the Appellant ever specifically requested information concerning the precise location of the drugs. Officer Maxfield's testimony at the suppression hearing notified the Appellant that Officer Peterson was the individual who actually recovered the drugs in the Appellant's apartment. The Appellant was thus aware that in order to obtain an accurate description concerning the location where the drugs were found, the Appellant would have had to subpoena Officer Peterson to testify at the suppression hearing or, at the very least, the Appellant would have had to interview Officer Peterson. The record fails to disclose that either effort was made by the Appellant or his attorney.
 
 
 33
 Even assuming that the Appellant has shown that the government failed to disclose evidence, the Appellant has not demonstrated that the government's failure to disclose the precise location of the drugs materially affected the outcome of his trial. The Appellant selectively cited a partial passage from Magistrate Taylor's opinion in support of his appeal, namely, "there is no evidence to suggest that the crack was found in a container that was too small to conceal weapons." However, prior to writing the above-cited passage, Magistrate Taylor had concluded that the search warrant had properly listed small items, like shell casings, in order to discover evidence that might have linked the defendants to various area shootings. Taylor's order only mentioned that the drugs were found in the kitchen cabinet as additional evidence of the propriety of the search warrant's terms. Thus, the Magistrate's ruling would have been the same regardless of whether the precise location of the drugs had been disclosed. Because the suppression motion would have been denied and the drugs would have been admitted into evidence, the evidence concerning the precise location of the seized drugs was not material.
 
 
 34
 The Appellant's argument that had he known the true location of the cocaine, he would have altered his trial strategy by conducting additional cross examination on government witnesses is similarly without merit. He does not say what additional questions he would have asked nor what responses he might have expected. The Appellant does not make clear how a new defense strategy would have caused a different outcome at trial. The government presented testimony from several witnesses describing the Appellant's drug trafficking activities. There is no reason to believe that this testimony would have been different if the government had disclosed that the drugs were found on top of the cabinet. Thus, the government's failure to disclose the precise location of the drugs did not materially affect the Appellant's trial.
 
 
 35
 Under Augurs, a defendants' conviction should be reversed in such a situation only if the undisclosed evidence "creates a reasonable doubt that did not otherwise exist" concerning the defendant's conviction. Augurs, 427 U.S. at 112. The fact that the drugs were found on top of the kitchen cabinets rather than inside them does not create the requisite reasonable doubt. Because the Appellant has not demonstrated that the precise location of the drugs was material evidence, his Brady challenge must fail.
 
 
 36
 Use of a Firearm in Relation to a Drug Trafficking Crime
 
 
 37
 The Appellant next contends that there was insufficient evidence to convict him of a violation of 18 U.S.C. Sec. 924(c)(1). Section 924(c)(1) states, in relevant part:
 
 
 38
 Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 39
 The Appellant argues that the government failed to present any evidence that the weapons seized were used for drug trafficking. Appellant argues that the inaccessibility of the guns, which were found in a locked utility closet, beneath several filled, large trash bags, demonstrates that he did not use the guns in relation to a crime. Recognizing that this Court construes Sec. 924(c)(1) broadly, the Appellant cites opinions from other circuits which have construed the language of the statute more narrowly, in support of his position. See, e.g., United States v. Feliz-Cordero, 859 F.2d 250, 254 (2nd. Cir.1988) (weapons found beyond the defendants' reach, could not be used to support 924(c)(1) conviction.)
 
 
 40
 In evaluating the sufficiency of evidence in a criminal appeal, an appellate court must review the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), to determine whether any reasonable jury could have found the Appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Upon review of the record, we affirm the district court's conviction under Sec. 924(c).
 
 
 41
 This Court has held that a weapon need not be brandished or displayed in order to establish "use" within the meaning of Section 924(c)(1), "it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used." United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988). Moreover, we have held that constructive possession of firearms in relation to a drug transaction is sufficient to establish "use." United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991).
 
 
 42
 Given the broad fourth circuit standard for "use," we hold that the government produced sufficient evidence at trial to sustain the Appellant's Sec. 924(c)(1) conviction. The police found crack in the Appellant's kitchen and then proceeded to find four firearms in his closet. A police officer testified that he believed the guns had been discharged. Furthermore, Government witnesses testified at trial that the Appellant carried a firearm with him when he sold drugs in the Terrybrook neighborhood. For these reasons we find the Appellant's challenge to his Sec. 924(c)(1) conviction to be meritless.
 
 Possession with Intent to Distribute
 
 43
 Finally, the Appellant argues that the government failed to demonstrate that he had the intent to distribute crack cocaine. As we have already discussed, we review the evidence in the light most favorable to the government to determine whether any reasonable jury could find the defendant guilty beyond a reasonable doubt. Glasser, supra; Jackson, supra.
 
 
 44
 In support of his position, the Appellant relies on our recent decision in United States v. Fountain, 993 F.2d 1136 (4th Cir.1993). In Fountain, we reversed a defendant's conviction for possession of marijuana with intent to distribute because the government had failed to produce sufficient evidence of any intent to distribute. In Fountain, the defendant had been arrested in an area known for heavy drug trafficking activity. The police found three baggies of marijuana containing 2.3 grams of the drug. Fountain also had small amounts of loose change and rolling papers in his pockets.
 
 
 45
 The prosecution offered the testimony of the police dispatcher, the arresting officer and a DEA special agent. The DEA agent testified that the scenario presented by the prosecution supported the theory that Fountain was a marijuana distributor. On cross examination, the agent admitted that the scenario was also consistent with Fountain being a drug user. Under those circumstances, we reversed Fountain's conviction holding that "the factors which led to the district court's conclusion were just suspicions, insufficient enough to sustain a conviction." Fountain, 993 F.2d at 1139.
 
 
 46
 In the present case, unlike Fountain, there is a great deal of evidence to sustain the Appellant's section 841(a)(1) conviction. The government elicited testimony from several witnesses--Derrick Withers, Christine Whitaker, LaShanda Dean, Tederrian McCree and Antonio Belk--which established that the Appellant had distributed crack cocaine in the Terrybrook Avenue neighborhood. The amount of drugs attributed to the Appellant in the present case is significantly larger than the amount Fountain possessed at the time of his arrest. Officer Peterson testified that he located 11.5 grams of crack cocaine in the Appellant's apartment. Officer Peterson also found scales, guns and large quantities of plastic bags in the apartment--items which serve as accoutrements to the drug trade. Thus, there was substantial evidence from which the jury could and did conclude that the Appellant possessed crack cocaine with the intent to distribute on April 30, 1992.
 
 III
 
 47
 In conclusion, we find the Appellant's three assignments of error to be without merit. Accordingly, the judgment of the district court is
 
 
 48
 AFFIRMED.