35 F.3d 557
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Roe MATTHEWS, Defendant-Appellant.
 No. 93-5182.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 24, 1994.
Decided Sept. 13, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Rock Hill. Joseph F. Anderson, Jr., District Judge. (CR-91-382-0)
 Jan S. Strifling, Columbia, SC, for appellant.
 J. Preston Strom, Jr., U.S. Atty., Mary Gordon Baker, Asst. U.S. Atty., Charleston, SC, for appellee.
 D.S.C.
 AFFIRMED.
 Before HALL, WILKINSON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 George Roe Matthews appeals his conviction and sentence for conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. Sec. 846 (1988) (Count One); attempt to possess with the intent to distribute marijuana in violation of 21 U.S.C. Sec. 846 (1988), and 18 U.S.C. Sec. 2 (1988) (Count Two); and using or carrying a firearm during a drug trafficking crime in violation of 18 U.S.C.A. Sec. 924(c) (West Supp.1994) (Count Three). Specifically, he challenges the sufficiency of the evidence to support the jury's finding that he used or carried a firearm during or in relation to a drug trafficking crime. Matthews also asserts on appeal that the district court erred in failing to grant him a two-point reduction in his offense level for acceptance of responsibility. For the reasons set forth below, we affirm both Matthews's conviction and sentence.
 
 
 2
 The charges against Matthews stemmed from an undercover "reverse sting" operation in which law enforcement agents sold marijuana to Matthews and Charles Young on November 2, 1992.[1] Young testified that he met the undercover agents, who were posing as drug dealers interested in selling marijuana. Young told the undercover agents that he could not buy any marijuana because he had no money, but that he could find someone to buy the marijuana. Young had a series of conversations with Matthews and Officer Pruitt, one of the undercover agents, in setting up the deal. Young further testified that while he was to make the deal, the marijuana was for Matthews. Young was to make $200 per pound of marijuana sold.
 
 
 3
 On November 2, 1992, the day of the attempted marijuana purchase, Matthews picked up Young at Young's house in Matthews's car; Matthews drove to meet the undercover agents at a grocery store parking lot. Matthews told Young that he did not want to see "the man" and that he wanted Young to "do the dealing." Matthews brought the money for the deal. Young left Matthews's car and talked to the agents in their truck to confirm that Matthews wanted to buy some marijuana. Young told the agents that Matthews did not want to see them, and that he wanted Young to handle the transaction. Both vehicles left, and then went first to a Burger King parking lot and then to Young's house, where the exchange of money and marijuana was to take place.
 
 
 4
 Young testified further that Matthews parked his car approximately ten to fifteen feet from Young's back porch, where the transaction was to occur. Matthews and Young went onto the back porch. The agents pulled in behind Matthews's car. Young went out and told the agents that Matthews wanted to test the marijuana before he purchased it. The agents gave Young one pound of marijuana for Matthews to check. Matthews removed the duct tape from the package, and rolled a marijuana cigarette. Before Matthews could light the marijuana cigarette, the agents came onto the back porch with an additional two pounds of marijuana. Young testified that Matthews counted out some money, handed it to Young, and that Young then handed the money to the agents. After the exchange of money for drugs, Matthews and Young were arrested.
 
 
 5
 Officer Pruitt's testimony differed factually from Young's in three respects. First, Pruitt testified that in addition to Young handing him money, Matthews directly handed him additional money, presumably for the additional two pounds of marijuana. He also testified that he handed the two pounds of marijuana to Matthews, while Young testified that Pruitt handed Young the two pounds. Finally, Pruitt testified that while parked at Burger King, Young took one pound of marijuana to Matthews's car for Matthews to check out, that Matthews started the motor with the marijuana still in his car, that Pruitt walked up to the passenger side of the car where Young was sitting, and that Young handed the marijuana back to Pruitt.[2] Otherwise, Pruitt's testimony corroborated Young's testimony.[3] Matthews was questioned following his arrest about any weapons on his person, and Matthews told the officer that he had a gun on the front seat of his car. A loaded .32 caliber firearm was found under the armrest of the front seat of Matthews's car. Young testified that at no time did he see the firearm or know that it was in Matthews's car.
 
 
 6
 Matthews was sentenced to eight months imprisonment on Counts One and Two, to run concurrent to each other and consecutive to sixty months imprisonment imposed on Count Three, a term of five years supervised release, and ordered to pay the mandatory special assessment of $150.00. Matthews timely appealed.
 
 
 7
 * A jury verdict must be sustained if there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). The relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found Matthews guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). "We must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." Id. In resolving issues of substantial evidence, this Court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). Circumstantial evidence need not exclude every reasonable hypothesis of innocence. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989).
 
 
 8
 "[C]onstructive possession of firearms in relation to a drug transaction is sufficient to establish 'use' " underSec. 924(c)(1). United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991). It is not necessary that a firearm be in immediate proximity or within arm's reach to constitute constructive possession. Id. "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item[,]" United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.), cert. denied, 447 U.S. 925 (1980), and has knowledge of the item's presence. United States v. Bell, 954 F.2d 232, 235 (4th Cir.1992). Both elements may be established by circumstantial evidence.
 
 
 9
 Bell, 954 F.2d at 235; United States v. Zandi, 769 F.2d 229, 234-35 (4th Cir.1985).
 
 
 10
 This Court has held that to establish constructive possession of a firearm in relation to a drug transaction, "it is enough [for purposes of Sec. 924(c)(1) ] if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used." United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988); see also United States v. Peay, 972 F.2d 71, 75 (4th Cir.1992) (evidence sufficient where agents, executing search warrants, found weapons in house and office where defendant had conducted drug transactions), cert. denied, 61 U.S.L.W. 3479 (U.S.1993). Moreover, "it is not unreasonable to recognize that weapons have become'tools of the trade' in illegal narcotics operations." United States v. White, 875 F.2d 427, 433 (4th Cir.1989) (quoting United States v. Hinds, 856 F.2d 438, 443 (1st Cir.1988)); see also Brockington, 849 F.2d at 876 ("common sense recognition that drug dealing is a dangerous and often violent enterprise.").
 
 
 11
 Here, an easily accessible, loaded firearm was in Matthews's car. Matthews had knowledge of the weapon's presence in his car, and he had dominion and control over the gun at times. See Bell, 954 F.2d at 235. While the firearm remained in Matthews's car during the final stages of the transaction, Matthews had access to the firearm on the way to the drug transaction, and while at the Burger King parking lot. According to the testimony of Officer Pruitt, Young brought one pound of marijuana to Matthews in the car at Burger King for Matthews to check, and Pruitt himself retrieved the marijuana from the passenger window of Matthews's car. In addition, Matthews's car, and the firearm, were only ten to fifteen feet from the actual money/marijuana exchange. After his arrest, Matthews admitted to an officer that the gun belonged to him.
 
 
 12
 We find that these facts are sufficient to lead a rational jury to conclude that Matthews had the firearm for protection, and to facilitate the likelihood of success of the drug deal, even though he did not actually use it, and even though the firearm was not within his arm's reach during the final stage of the transaction. See Brockington, 849 F.2d at 876. Accordingly, we affirm Matthews's conviction on Count Three.
 
 II
 
 13
 Matthews's second claim is that the sentencing court erred in denying him a two-point reduction in his offense level for acceptance of responsibility. A defendant must establish by a preponderance of evidence that he is entitled to the adjustment. United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir.), cert. denied, 493 U.S. 943 (1989). Whether the reduction is warranted "is primarily a factual question, and due deference for the sentencing court requires an appellate court to accept its findings unless they are clearly erroneous." United States v. Cusack, 901 F.2d 29, 31 (4th Cir.1990).
 
 
 14
 Matthews asserts that he is entitled to a two-point reduction in his offense level because he told authorities during his arrest that he had a gun in the car. The record reveals that the district court carefully considered Matthews's statement, and determined that it did not justify the requested reduction. Given the broad discretion granted to sentencing judges in determining whether to adjust for acceptance of responsibility, see United States Sentencing Commission, Guidelines Manual Sec. 3E1.1, comment. (n. 5) (Nov.1993), the district court's careful consideration of the issue, and the fact that defendants who plead not guilty and go to trial, putting the facts at issue, are rarely entitled to a reduction, see U.S.S.G. Sec. 3E1.1, comment. (n. 2) (Nov.1993), we find that the district court's failure to grant Matthews's request for a two-point acceptance of responsibility reduction was not clearly erroneous. We therefore affirm the district court's determination on this issue.
 
 
 15
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Young pled guilty to drug charges and later testified against Matthews
 
 
 [2]
 Young testified that he could not recall whether one of the officers approached Matthews's car while they were in the Burger King parking lot
 
 
 [3]
 The transaction and telephone conversations between Young and the undercover agent setting up the drug deal were audiotaped, and the tape of the transaction was entered into evidence during Pruitt's testimony