37 F.3d 1496
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David Leander LYNN, Jr., Defendant-Appellant.
 No. 93-5832.
 United States Court of Appeals, Fourth Circuit.
 Argued May 13, 1994.
Decided Oct. 12, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Frank W. Bullock, Jr., Chief District Judge. (CR-93-66).
 ARGUED: Anthony Wayne Harrison, Sr., Harrison, North, Cooke & Landreth, Greensboro, NC, for appellant.
 Robert Michael Hamilton, Asst. U.S. Atty., Greensboro, NC, for appellee.
 ON BRIEF: Benjamin H. White, Jr., U.S. Atty., Greensboro, NC, for appellee.
 M.D.N.C.
 AFFIRMED.
 Before WIDENER and WILKINS, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 David Leander Lynn, Jr. appeals his conviction on drug and firearms charges under 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(ii), and 853 (Count I) and 18 U.S.C. Sec. 924(c)(1) (Count II). He raises four challenges to his conviction: (1) that the initial warrant was issued without sufficient probable cause, (2) that the initial warrant was overly broad, (3) that the officers engaged in the initial search exceeded the scope of the warrant, and (4) that the trial court erred as a matter of law in denying a Rule 29 motion to dismiss Count II of the indictment. Having considered these challenges and finding no error, we affirm.
 
 I.
 
 2
 Lynn is the owner and operator of Lynn's Auto Sales and Tire Village ("Tire Village"), located in Reidsville, North Carolina. He is licensed to operate an official state inspection station at that location. The Department of Motor Vehicles ("DMV") is responsible for inspecting all state inspection stations to ensure that they are operating in compliance with state laws.
 
 
 3
 In December 1992, a DMV driving examiner noticed that an examinee had a DMV inspection sticker valid for more than twelve months. This was surprising because DMV stickers, by law, cannot be valid for more than twelve months. Because the sticker in question had been issued at Tire Village, DMV Inspector Sharpe researched Tire Village's DMV records and discovered that, from February 19, 1992 through January 29, 1993, Lynn had purchased 9000 windshield inspection stickers from the state. Sharpe also found this surprising because he determined that Tire Village was only capable of inspecting approximately 5000 vehicles per year. As a result of this discovery, Sharpe then sent an undercover DMV agent to Tire Village, who, on three occasions, was able to obtain a new inspection sticker without having any inspection tests performed.
 
 
 4
 Thereafter, on February 15, 1993, DMV inspectors visited Tire Village and requested access to inspection records. Lynn replied that all such records were at his home and went to retrieve them. He returned without the records, stating that he was locked out of his home. Inspectors visited Tire Village later that same day, but Lynn still produced no records. Inspectors then directed Lynn to appear at the DMV with his records the following day, but Lynn failed to do so. Instead, Lynn called the DMV, claiming that he could not find his records. On February 17, 1993, a Tire Village employee voluntarily turned over some of the missing records to the DMV inspectors. Review of these partial records disclosed numerous violations of law.
 
 
 5
 On March 1, 1993, Sharpe applied for and received warrants to search the business premises at Tire Village and Lynn's home at 2995 Wentworth Street. Sharpe was assisted in the execution of the warrants by approximately fifteen law enforcement officers, some of whom were primarily narcotics officers. During the search of Lynn's home, officers found approximately $135,000 and a revolver in a safe located in the basement. Upstairs, officers found a straw of the sort typically used by drug abusers to snort cocaine. This straw, found in a dresser jewelry box, also had a white residue on it. Officers also found a set of handscales and a plastic bag containing white powder residue in a bathroom drawer, and about one-eighth ( 1/8) ounce of white powder in the medicine cabinet. And finally, the officers found a handgun in the master bedroom, hidden beneath a mattress.
 
 
 6
 Following these discoveries, a detective with the Rockingham County Sheriff's Office left the residence to obtain a warrant to search for narcotics. After this second warrant was issued, officers found approximately 872 grams of cocaine under the stairs in the basement. Lynn was placed under arrest and advised of his right to remain silent. He waived this right and admitted ownership of the cocaine seized in the house. Following a jury trial, Lynn was convicted of (1) possession with the intent to distribute cocaine hydrochloride under 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(ii), and 853 (Count I), and (2) possession of firearms in furtherance of a drug trafficking crime under 18 U.S.C. Sec. 924(c)(1) (Count II).
 
 II.
 
 7
 The four grounds for appeal raised by Lynn involve various standards of review. First, the sufficiency of a search warrant and its supporting affidavit is reviewed de novo to determine whether a "substantial basis" exists for the magistrate judge's decision. United States v. Oloyede, 982 F.2d 133, 138 (4th Cir.1992). The magistrate judge's determination of probable cause, however, is entitled to substantial deference. United States v. Ventresca, 380 U.S. 102, 109 (1965).
 
 
 8
 Next, a reviewing court must determine whether there is substantial evidence in the record to support the jury's findings that the defendant is guilty beyond a reasonable doubt. United States v. Stockton, 788 F.2d 210 (4th Cir.1986), cert. denied, 479 U.S. 840 (1986). In doing so, the Court must construe the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60 (1942). Finally, the questions of law imbedded in the district court's interpretation of Sec. 924(c) are reviewed de novo. United States v. Rusher, 966 F.2d 868 (4th Cir.1992).
 
 III.
 
 9
 Lynn's first challenge to his conviction is that the initial warrant authorizing a search of his home was issued without probable cause. Lynn bases this claim on two grounds. First, Lynn contends that the DMV agents' February 15, 1993 "inspection audit" at the Tire Village was not a valid "inspection," and consequently Lynn's comments to the DMV agents at that time should not be available as a source of probable cause for the issuance of the initial warrant. This argument is meritless. Under North Carolina law, Sharpe was authorized to inspect records at a vehicle inspection station without a warrant. Accordingly, Lynn's statements at that time were not obtained in the course of an illegal or otherwise improper search, nor were they the product of custodial interrogation. Rather, Lynn's voluntary statements emerged in the normal course of Sharpe's duties and were therefore properly admitted at trial.
 
 
 10
 Lynn next makes the curious argument that the initial warrant to search his home was secured without probable cause because his statements to the DMV agents, even if admissible, were not credible and therefore should not have been available as a source of probable cause for the issuance of the initial search warrant. This argument rests on United States v. Kolodziej, 712 F.2d 975, 977 (5th Cir.1983), in which several arrestees told police that Kolodziej had supplied them with drugs and one cooperating defendant stated that Kolodziej kept money in the trunk of his car. The Fifth Circuit found the affidavit lacking in probable cause because the affidavit did not state that anyone had seen drugs at any location or had actually seen drug money go into the trunk of the car. Id.
 
 
 11
 The instant case is easily distinguishable from Kolodziej, however, because the information involved here came from Lynn himself, who plainly had a basis for knowing where the Tire Village records were located. Furthermore, Lynn had told the inspectors that the records were located at his home and not at Tire Village. Given this and because the law required that the records be kept for thirty months, a strong inference arose that the records would be located at his home. See United States v. Anderson, 851 F.2d 727, 729 (4th Cir.1988), cert. denied, 488 U.S. 1031 (1989) (even if a search warrant affidavit contains no facts that the item to be searched for is in the place to be searched, a magistrate may draw reasonable inferences that the place to be searched is a likely place for the item to be located). Accordingly, probable cause existed for the issuance of the initial warrant to search Lynn's home.
 
 IV.
 
 12
 Lynn next contends that the initial warrant's description of items to be seized was too broad, and therefore constituted an invalid general warrant. The Fourth Amendment requires that a search warrant describe the items to be seized with sufficient particularity to prevent a "general, exploratory rummaging." United States v. Oloyede, 982 F.2d 133, 138 (4th Cir.1992) (citing Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). Courts must be vigilant, therefore, to ensure that the scope of the power granted to law enforcement officials in search warrants is narrowly drawn and clearly set forth.
 
 
 13
 The warrant at issue indicated that the search was for
 
 
 14
 windshield inspection certificates, inspection certificate records and receipts, titles to motor vehicles, receipts and records of motor vehicle transactions, United States currency and coin, which constitutes evidence of a crime and the identity of a person participating in a crime, obtaining property under false pretenses, fraud, possession of open title in violation of N.C. Gen.Stat. Sec. 20-82.
 
 
 15
 In our view, this language is not overly broad; it is, on the contrary, narrowly and precisely tailored to inform the searching officials of the limits of their power. Moreover, where, as here, there is a supporting affidavit incorporated by reference in the warrant, it is clear that "[a]n affidavit may provide the necessary particularity for a warrant...." United States v. Washington, 852 F.2d 803, 805 (4th Cir.1988), cert. denied, 488 U.S. 974 (1988) (citing Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir.1987)). When the language of the warrant at issue is construed together with the information contained in the supporting affidavit, it is clear that the executing officers' discretion was appropriately confined to searching for evidence related to the crime of inspection sticker fraud. This conclusion is consistent with previous caselaw in this circuit. See United States v. Washington, at 805 (upholding as sufficiently particular a warrant authorizing the seizure of "heroin, a quantity of drug paraphernalia, papers, notes, bank records, identification documents, and other items of evidence" where the affidavit in support of the warrant, which added additional detail, was attached to the search warrant); see also United States v. Fawole, 785 F.2d 1141, 1144 (4th Cir.1986) (upholding as sufficiently particular a warrant authorizing the seizure of "address books, diaries, business records, documents, receipts, warranty books, guns, stereo equipment, [and] color television which are, evidence of Violation of Georgia State Statute 16-8-2 Theft by Taking").
 
 V.
 
 16
 Lynn next contends that the officers conducting the initial search exceeded the scope of the search warrant. In support of this argument, Lynn points to three instances of police conduct. First, Lynn takes issue with a "briefing" held on the morning of the initial search, at which a law enforcement officer mentioned the possibility that narcotics might be found at Lynn's residence, in which event, a second search warrant would be sought. Lynn next objects to an officer's search of a medicine cabinet, in which the officer found cocaine hidden behind a bar of soap. Finally, Lynn contends that an officer's search of a gun case and seizure of weapons was improper as beyond the scope of the search warrant.
 
 
 17
 Addressing these challenges in turn, we first find that the fact that officers mentioned, and perhaps suspected, that drugs might be found at Lynn's residence does not serve to immunize the drugs that were found. Where, as here, there is a valid warrant to search for one item and merely a suspicion concerning a second item, the absence of probable cause with respect to the second item does not immunize the second item from seizure if it is found during a lawful search for the first. Horton v. California, 496 U.S. 128, 138-39 (1990). It follows, therefore, the mere fact that the officers suspected that drugs would be found in Lynn's home will not serve to immunize the drugs found from seizure.
 
 
 18
 Next, we consider whether the officers' search exceeded the scope of the warrant. Just as it is important that the power of law enforcement officials be restrained by narrowly drawn and detailed search warrants, it is equally important that courts ensure that officials do not exceed the power granted to them by going beyond the limitations set forth in warrants. See, e.g., United States v. Shilling, 826 F.2d 1365, 1369-70 (4th Cir.1987), cert. denied, 484 U.S. 1043 (1988) (expressing concerns regarding over broad searches and "fishing expeditions"). With this in mind, we find that the officers' search of Lynn's home did not exceed the scope of the warrant. It was reasonable for the officers to search thoroughly because inspection stickers and receipts, the objects specified in the search warrant, could easily be folded and hidden in a medicine cabinet, or even behind a bar of soap. Similarly, the officers' search of the gun case was proper, not only because the inspection stickers and receipts could have been hidden within the gun case, but also as a matter of security for the officers. At the time that the search was conducted, Lynn was still in the house. Accordingly, it was reasonable for the officers to seize and disarm the weapons found in the house. Then, after the second warrant had been obtained, these weapons were appropriately seized as within the scope of the second warrant.
 
 VI.
 
 19
 Finally, Lynn challenges his conviction under Count II of the indictment, in which Lynn was charged with use of a firearm "in rela tion to" a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). Lynn raises two grounds for the invalidation of his conviction: (1)insufficient evidence, and (2) the jury's failure to indicate which of the two guns seized formed the basis for its verdict of guilt.
 
 Section 924(c) states in pertinent part:
 
 20
 Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 21
 Lynn contends that the government offered no evidence that he used the guns seized "during and in relation to" any drug trafficking crimes. Further, Lynn points out that there was no evidence that he had ever transacted a drug sale in the house. He also notes that the pistol found upstairs was hidden and relatively inaccessible, and that the revolver found in the basement was locked in a safe and was unloaded.
 
 
 22
 Despite these facts, Lynn's argument fails. We previously considered a similar argument in United States v. Paz, 927 F.2d 176, 178-79 (4th Cir.1991). In Paz, the police, in searching the defendant's home, found 10.5 grams of cocaine, 55.5 grams of cocaine base ("crack"), and $1800 in defendant's bedroom. In addition, the police, acting on the defendant's voluntary statement, discovered a gun hidden underneath the mattress in the bedroom. We found that these facts provided sufficient evidence for a Sec. 924(c) conviction, noting that "constructive possession of firearms in relation to a drug transaction is sufficient to establish 'use.' " Id. at 179. We further elaborated that "the weapon need not be brandished or displayed," but rather " 'it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used.' " Id. (citing United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988)).
 
 
 23
 The facts here support the same conclusion reached in Paz. Although the weapons involved here, like the weapon in Paz, were not immediately accessible, the proximity of the weapons to the instrumentalities of drug trafficking* properly allowed the jury to conclude that Lynn used the firearms in his drug trafficking activities. Accordingly, the evidence was sufficient to support Lynn's conviction under Sec. 924(c).
 
 
 24
 Next, Lynn contends that his Sec. 924(c) conviction violated Due Process because the jury failed to indicate which of the two guns seized formed the basis for its guilty verdict. In support of this argument, Lynn cites United States v. Theodoropoulos, 866 F.2d 587, 597 (3d Cir.1989), in which the Third Circuit reversed a conviction under Sec. 924(c) because the jury did not indicate which of several weapons seized was the basis for the guilty verdict. Significantly, the Third Circuit noted that several of the weapons involved were found in trash cans outside the defendant's apartment, and that these weapons could not serve as a basis for a finding of guilt underSec. 924(c). Accordingly, because the jury's verdict might have been based upon weapons which could not support a Sec. 924(c) conviction, the defendant's conviction on that charge was overturned. Id.
 
 
 25
 Lynn's reliance on Theodoropoulos is misplaced because it is easily distinguished from the instant case. Unlike the facts in Theodoropoulos, either of the weapons seized in Lynn's home would have independently qualified as a proper basis for a conviction under Sec. 924(c); both were found in close proximity to the instrumentalities of drug trafficking. Accordingly, the concerns expressed in the Theodoropoulos decision are not applicable here. Consequently, Lynn's Sec. 924(c) conviction should not be invalidated due to the jury's failure to indicate which weapon formed the basis for the Sec. 924(c) conviction.
 
 
 26
 Because each of the challenges raised by Lynn lacks merit, Lynn's conviction is accordingly
 
 
 27
 AFFIRMED.
 
 
 
 *
 One weapon was found locked in the basement safe along with approximately $135,000. Elsewhere in the basement, the police found approximately 872 grams of cocaine. The second weapon was found upstairs near cocaine, scales, and baggies