**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 96-4150

MICHAEL ERNEST THOMPSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 96-4298

WALTER ROBERT HOUCHINS,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
Frank W. Bullock, Jr., Chief District Judge;
James A. Beaty, Jr., District Judge.
(CR-95-181-6)

Submitted: December 19, 1996

Decided: January 6, 1997

Before ERVIN and MOTZ, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael A. Grace, Lisa S. Costner, TISDALE, GRACE, MENEFEE & COSTNER, P.A., Winston-Salem, North Carolina; David B. Freedman, WHITE & CRUMPLER, Winston-Salem, North Carolina, for Appellants. Walter C. Holton, Jr., United States Attorney, Robert M. Hamilton, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Ernest Thompson and Walter Robert Houchins both pled guilty to conspiracy to possess more than 50 grams of cocaine base ("crack") with intent to distribute, 21 U.S.C.§ 846 (1994) (Count One), and attempt to possess 1500 grams of cocaine hydrochloride with intent to distribute, 21 U.S.C. § 846 (Count Two). In connection with Count One, Thompson reserved the right to argue at sentencing that the substance involved was cocaine hydrochloride (powder cocaine). Thompson was sentenced to 135 months imprisonment and Houchins received a sentence of 170 months. Both appeal their sentences, contending that they should have been sentenced under the lower penalties for powder cocaine. We affirm.

On July 3, 1995, a federal prisoner contacted Drug Enforcement Administration agent Charles Graham in Greensboro, North Carolina, and told him that Houchins was trying to find out who his source had been. Graham told the prisoner to give Houchins his number and within an hour Houchins called Graham. At Thompson's sentencing hearing, Graham testified that Houchins said he wanted to buy a kilogram of powder cocaine; they agreed on a price of $22,000. Later the same day, Houchins called again and asked whether he could get a

2

kilogram of crack instead, to expedite matters, because his customers wanted crack. Graham said he could have the crack in two days. Houchins then explained that he wanted the end-product to be crack with a yellow color (indicating more potency), that he really preferred to buy powder cocaine because he could test its purity more easily, and that he wanted to get at least 36 ounces of crack from a kilogram of powder cocaine. Graham and Houchins agreed to meet on July 5. Houchins said his partner in New Jersey, who handled the money, would have to come down so they could "do their thing."

On July 5, Graham met Houchins and Thompson at a restaurant where they decided to pay for one kilogram of powder cocaine and have Graham front them another half-kilogram. Thompson expressed the same concerns as Houchins about whether the kilogram would yield 36 ounces when it was cooked and the color of the final product. Two hours later, Graham met Houchins and Thompson at a hotel where they showed him a bag of cash and he displayed the cocaine and asked whether they wanted to test it. Thompson said he did. They all went into a hotel room, where both defendants were arrested. Authorities then searched the apartment Houchins shared with co-defendant Douglas McCain.* In Houchins' bedroom, they found 13 grams of crack, cocaine residue and a razor blade in a container, boxes of ammunition and plastic bags, and receipts for money orders sent to Thompson. Another 17 grams of crack and two firearms were in McCain's room. Thompson's traveling bag was also in the apartment; it contained a ledger in which Houchins' street name appeared several times.

Thompson and Houchins both maintain that the district court clearly erred in converting the 1.5 kilograms of powder cocaine to crack for sentencing purposes because the only evidence that Appellants intended to cook the powder cocaine into crack was Houchins' statements. They contend that his statements were ambiguous puffery and were elicited by Agent Graham. The record does not bear out these assertions. Houchins told the agent that he wanted to buy powder cocaine which would convert into 36 ounces or more of good quality crack. Thompson made similar statements. This was sufficient for the court to find by a preponderance of the evidence that their

_____

*McCain met Thompson at the airport that morning.

3

intent was to convert the powder cocaine to crack for distribution. Consequently, a sentence under the crack guidelines was appropriate. United States v. McMurray, 34 F.3d 1405, 1414 (8th Cir. 1994), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3627 (U.S. Feb. 21, 1995) (No. 94-7605); United States v. Paz, 927 F.2d 176, 180 (4th Cir. 1991). The government was not required to prove that Appellants would have converted the cocaine into crack rather than some other form of cocaine base. This court has held that, for sentencing purposes, the term "cocaine base" includes crack. United States v. Pinto, 905 F.2d 47, 49 (4th Cir. 1990).

Thompson contends on appeal that the court failed to find that Houchins' statements to the agent were within the scope of his agreement with Houchins. His argument is without basis. Thompson argued at sentencing that there was no evidence, beyond conjecture, that he knew Houchins intended to convert the cocaine to crack. However, the district court found that the government had proved that Thompson and Houchins had conspired to possess crack for distribution and that Thompson had come from New Jersey to North Carolina for the purpose of converting the powder cocaine to crack. The court's finding resolved the issue and was not clearly erroneous.

The convictions and sentences are therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4