UNITED STATES of America

v.

Darlene WILSON, a/k/a Kilkea, Andrea Ruffin, Appellant.

Nos. 86–3076 to 86–3080.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1987.

Decided Dec. 24, 1987.

As Amended Dec. 31, 1987.

■■■■

Appeals from the United States District Court for the District of Columbia (Criminal Nos. 85–00340–01, 03, 04, 05 and 06).

David A. Reiser (Appointed by this Court) for Darlene Wilson and Thomas M. Slawson (Appointed by this Court) for Rosalind Wood, with whom Stephen D. Scavuzzo (Appointed by this Court) for Sylvia Bumbry, Mary E. Davis (Appointed by this Court) for Gloria Denson, and Noel H. Thompson (Appointed by this Court) for Mary Adams, were on the joint brief, for appellants.

Theresa L. McHenry, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. and Michael W. Farrell, Asst. U.S. Atty., were on brief, for appellee.

Before WALD, Chief Judge, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Darlene Wilson and her co-defendants, Mary Adams, Sylvia Bumbry, Gloria Denson, and Rosalind Wood, appeal their convictions for conspiracy to commit wire and mail fraud, and for wire fraud, in violation of 18 U.S.C. §§ 371, 1341, 1343 (1982). The gist of the government's case was that defendants agreed that Wilson would make a fraudulent application for benefits under the Aid to Families With Dependent Children program, and that she carried out the scheme with advice, information, and false documentation provided by her co-defendants. The government's evidence consisted primarily of 23 taped conversations in which appellants and others discussed and coordinated their scheme. Government agents recorded these conversations pursuant to a court-ordered wiretap.

In this appeal, defendants' primary claims [1] are that their convictions violated the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1982), and that wiretap evidence introduced against them was obtained in violation of the requirement of 18 U.S.C. § 2518(5) that such taps "minimize the interception of communications" not otherwise subject to interception." We reject both claims.

## I. SPEEDY TRIAL ACT CLAIM

The Speedy Trial Act requires that no more than 70 days elapse between indictment and trial, 18 U.S.C. § 3161(c)(1), other than days excluded from computation. The parties agree that in fact 283 days passed and 43 days are excludable—those from the filing to the disposition of defendants' motions to suppress. The government would exclude 188 additional days: 95 for various other motions,[2] and 93 for time the trial court allowed defendants for the *preparation* of their motions to suppress. The government would also have us exclude, under the ends of justice provision of 18 U.S.C. § 3161(h)(8)(A), the delay resulting from the trial court's decision to postpone this case until completion of a related trial; as we uphold exclusion of 188 disputed days claimed by the government for motions, and this decision leaves only 52 included days, we do not reach that issue.

As to the 95 days excluded for the pendency of motions other than the motion to

---

**1.** The other claims, which on the facts of the case do not merit discussion, are that the evidence was insufficient to support the convictions and that the trial court (1) erred in refusing to excuse for cause a potential juror employed as an attorney by the Antitrust Division of the Justice Department on the ground of potential bias; (2) erroneously admitted evidence (a) that the driver's license machine used by Wilson to counterfeit a driver's license to support her fraudulent welfare application had been stolen and (b) that Denson had previously committed welfare fraud; and (3) abused its discretion in denying Denson's last-minute request to proceed *pro se.*

**2.** One of these was a delay from May 4 to 17, 1986, for which the government claims 11 days of exclusion. This looks like 14 days to us, but the arithmetic makes no difference in light of our decision.

suppress, defendants raise a variety of objections. One objection goes to whether the pendency of the motions (17 in all) *caused* the delay that actually occurred. The argument starts by assuming that a causal relation is necessary and then contends that it was missing here—because, defendants argue, the trial court's decision to defer defendants' trial until after the conclusion of a related one was a sufficient explanation of the delay.

A second set of objections goes to the type of motions involved. Rule 12(b)(2) of the Federal Rules of Criminal Procedure requires a defendant to raise certain issues by pretrial motion, on pain of being barred from ever raising such issues. Many of the motions for which exclusion is disputed were not of this type—for example, motions to modify pretrial release conditions and to permit a tape recorder in the cell block. Defendants do not explain why these should be excluded, though they might have advanced the contention as a subspecies of their causation theory. (If defendants need not make a motion nor the trial court resolve it before trial, then in some sense its pendency does not delay trial.) Finally, defendants argue that in any event we must not exclude time for their motion to dismiss on speedy trial grounds. Exclusion of time for that motion, they say, puts defendants in a catch–22 situation, in that assertion of their speedy-trial rights will cause further excludable delay and thus impinge on those very rights.

As to the 93 days allotted to defendants at their request for preparation of motions to suppress, they argue that this period must not be excluded because the Act's provision for exclusion of time for motions does not mention preparation time.

We reject both sets of claims. The result is to exclude an additional 188 days. Thus there is no violation of the Speedy Trial Act.

A. *Motions that Are Not the Sole Cause of Trial Delay and that Need Not Be Addressed Before Trial*

■ The Act excludes "delay resulting from any pretrial motion, from the filing of

the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). The Supreme Court has held that this section must be read in connection with § 3161(h)(1)(J), which excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299 (1986). The two subsections taken together thus exclude the time between the filing of a motion and the date it is taken under advisement by the court, plus the time during which the court holds the motion under advisement (up to 30 days). *Id.*

First we note that defendants' causation attack is not an argument against double-counting; it would work quite apart from any *exclusion* of time based on the decision to defer defendants' trial until after the related one (an exclusion which, as noted above, we do not rely on here). The theory is simply that the trial judge's intention to delay the trial on other grounds negates excludability.

■ The theory is hung on a verbal peg provided by the statute, which only excludes delay "resulting from" a pretrial motion. But acceptance of the claim would force courts to resolve intractable causation issues, for no apparent purpose. Anytime that pretrial motion practice overlapped with a real—but disputable—alternative source of delay, a court would either have to resolve the causation issue or reach the validity of the disputed alternative cause. Pretrial motions necessarily take the time of prosecutors to respond and courts to evaluate. They thus represent a sufficient cause for pretrial delay. No finding of causation is necessary for motions beyond what is implicit in the Act's recognition of their time-consuming character.

Defendants contend that the scheduled delay for a related trial led them to believe that the speedy trial clock was already stopped. This lulled them into the belief

that their motions would be "cost free," in the sense of not affecting the time when the Act would bar their trial. They offer nothing to prove that this lulling played any role at all in their decisions to file motions, but the fact gap is no matter: the theory is wrong.

■ Defendants' knowledge that the trial would be deferred for other reasons was *not* knowledge that such deferral was legitimate and therefore was not a basis for assuming that they could make a blizzard of motions without affecting their rights under the Act. If the alternative cause for delay was legitimate (the issue we do not reach) and they relied on that for supposing that motions practice would not affect their rights under the Act, then their supposition was right and they were not injured. If the alternative cause was an illegitimate basis for deferral, as we have assumed *arguendo*, then the pretrial motions were not cost-free (in terms of authorizing trial delay). Any reliance on the alternative cause of trial postponement was incorrect; but the mistake was not due to any deception practiced on the defendants by court or government, but simply to defendants' erroneous assessment of the validity of the alternative cause. Finally, to the extent that the legitimacy of the alternative cause was in doubt, defendants could and should have taken that uncertainty into account in assessing the likelihood that new motions would defer the permissible date for the start of trial.

We are confirmed in our refusal to consider causation by the legislative history of the 1979 amendments, which frequently emphasizes the automatic character of the exclusion for the pendency of motions. The court of appeals for the Second Circuit reviewed this history in detail in *United States v. Cobb*, 697 F.2d 38, 41–42 (2d Cir.1982). It would serve no purpose for us to repeat it, and defendants call our attention to nothing tending to refute or undermine that court's discussion.

■ Accordingly, we join not only the Second Circuit but several others finding that the exclusion of the time between the filing and disposition of pretrial motions

under § 3161(h)(1)(F) is automatic and need not cause actual delay of the trial. *See United States v. Van Brandy*, 726 F.2d 548, 551 (9th Cir.) (automatic exclusion for period in which renewal of motion to suppress was pending, even though trial court deferred hearing and ruling on the motion until trial), *cert. denied*, 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 79 (1984); *United States v. Novak*, 715 F.2d 810, 813 (3d Cir.1983) (Congress intended exclusion for all pretrial motions to be automatic), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *United States v. Stafford*, 697 F.2d 1368, 1371 (11th Cir.1983) (noting a contrary conclusion would "present extremely difficult practical questions of whether a particular motion did or did not actually delay the commencement of a trial"); *United States v. Brim*, 630 F.2d 1307, 1312 (8th Cir.1980) (ordinary pretrial motions such as motions for discovery and disclosures of alibi witnesses give rise to excludable periods even though they cause no delay), *cert. denied*, 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981).

■ Defendants' theory derived from Rule 12(b)(2) fares no better. As the Supreme Court has noted, Congress in providing for exclusions for criminal motion practice used the phrase "any pretrial motion." *See Henderson v. United States*, 106 S.Ct. at 1874 ("[o]n its face, subsection (F) excludes ... '[a]ny pretrial motion'") (emphasis added). For this claim, accordingly, there is no statutory basis at all. Nor does it seem to us any great puzzle why Congress spoke in broad terms. As we noted above, any pretrial motion takes time. The relation of a motion to Rule 12(b)(2) tells us nothing about its tendency to do so.

Although we have found no case explicitly rejecting the distinction raised by defendants, courts have certainly excluded time devoted to motions that need not have been filed before trial. *See, e.g., United States v. Severdija*, 723 F.2d 791 (11th Cir.1984) (excluding time in which motion to reduce bond was pending). In terms of the congressional purpose, this exclusion seems plainly correct.

■ Nor are we persuaded by the argument that exclusion of time spent on speedy trial motions is forbidden. As the Second Circuit has noted, the need for government and court time for their disposition is just the same as for other motions. *See United States v. Bolden,* 700 F.2d 102, 103 (2d Cir.1983); *see also United States v. Van Brandy,* 726 F.2d 548 (9th Cir.), *cert. denied,* 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 79 (1984). And the alleged catch–22 is illusory. Motions for dismissal of an indictment on speedy trial grounds necessarily fall into one or the other of two categories: those that are entitled to prevail and those that are not. As to the first, the trial court's granting the motion will clearly give defendant what he or she wants; where the trial court erroneously denies the motion, trial will be delayed but (presumably) the court of appeals or Supreme Court will protect the defendant from the ensuing illegal conviction. As for motions not entitled to prevail, it is hardly unfair that defendant's decision to raise the issue before trial should cost some delay.

This may seem to disregard Speedy Trial Act claims that have some merit but ultimately fail. However real defendant's dilemma may be, it defies understanding why delays attributable to his or her raising an ultimately unsuccessful claim should defeat an otherwise legitimate conviction.

Accordingly, we find that the periods in which pretrial motions were pending in this case, aggregating 95 days, were properly excluded under § 3161(h)(1)(F).[3]

B. *Defendants' Time Preparing Pretrial Motions*

■ Defendants contend that the trial court improperly excluded the time they spent preparing their pretrial motions to suppress. We disagree. § 3161(h)(1) permits the court to exclude "[a]ny period of delay resulting from other proceedings concerning the defendant, including *but not limited to*" the delay caused by the proceedings specifically listed in subparts (A) through (J) (emphasis added). As this court has previously pointed out, "[t]he list of 'other proceedings', as this language shows, is merely illustrative and not intended to be exhaustive." *United States v. Garrett,* 720 F.2d 705, 709 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1311, 79 L.Ed.2d 708 (1984). Two other circuits have expressly held that the "other proceedings" may include time allotted by the trial judge for preparation of motions, even though § 3161(h)(1)(F), specifically dealing with motions, does not cover preparation time. *United States v. Tibboel,* 753 F.2d 608, 610 (7th Cir.1985); *United States v. Jodoin,* 672 F.2d 232, 238 (1st Cir.1982). We join those circuits. Thus the trial court may exclude motion preparation time in its sound discretion, *see Garrett,* 720 F.2d at 709–10, a discretion explicitly exercised in this case, *see* J.A. 722–23 (granting the government's motion to exclude this time, in reliance on the general language of § 3161(h)(1)).

■ Such exclusion is clearly appropriate where (as here) it was the defendants who requested the extra preparation time. The Act cannot be construed as a trap for trial judges, as it would be if such an accommodation of defendants could be the basis for invalidating their convictions. *United States v. Eakes,* 783 F.2d 499, 503 (5th Cir.) (Act not a "two-edged sword" as it would be if such time were included), *cert. denied,* —— U.S. ——, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986). We need not decide whether the question would be decided differently if it was the government who requested extra time to prepare to file a motion. *See also Tibboel,* 753 F.2d at 610.

3. One motion, a motion in limine, was never expressly resolved. The government argues that the excludable time period for this motion is the time between its filing and its being taken under advisement (May 14, 1986 to June 3, 1986), plus 30 days thereafter, citing *United States v. Bufalino,* 683 F.2d 639, 644 (2d Cir.1982) (involving many motions, including an unresolved motion to sequester the jury), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983). Allowance of 30 days for consideration superficially fits within the principles for computation, but as the necessary portion of that period is covered by other motions we do not address the point.

As did the court in *Tibboel,* we limit the exclusion for motion preparation to instances where the trial court has expressly granted time for the purpose. *Id.* at 610; *see also United States v. Jodoin,* 672 F.2d 232, 238 (1st Cir.1982). Without the qualification, the speedy trial clock could theoretically be stopped merely because of a party's continuous and leisurely preparation of motions.

As the proper exclusion of 231 days leaves only 52 nonexcludable days of delay, defendants' right to a speedy trial was not violated.

## II. WIRETAP MINIMIZATION

The standard governing compliance with 18 U.S.C. § 2518(5)'s requirement that agents minimize the tapping of innocent conversations is "one of reasonableness," *United States v. James,* 494 F.2d 1007, 1018 (D.C. Cir.), *cert. denied* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974), and is satisfied if " 'on the whole the agents have shown a high regard for the right of privacy and have done all they *reasonably* could to avoid unnecessary intrusion,' " *id.* (quoting *United States v. Tortorello,* 480 F.2d 764, 784 (2d Cir.1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973)) (emphasis added in *James*).

Application of the standard varies with the real-world problems confronting the investigators. The courts have recognized that investigation of a large, complicated conspiracy justifies a relatively intensive surveillance of calls. *See Scott v. United States,* 436 U.S. 128, 142, 98 S.Ct. 1717, 1725, 56 L.Ed.2d 168 (1978) ("In a case such as this, involving a wide-ranging conspiracy with a large number of participants, even a seasoned listener would have been hard pressed to determine with any precision the relevancy of many of the calls before they were completed") (footnote omitted); *United States v. James,* 494 F.2d at 1019 ("Where the criminal enterprise under investigation is a large-scale conspiracy with many participants, it may be necessary for the government to monitor more conversations with greater intensity than when the investigation is more limited"); *United States v. Cox,* 462 F.2d 1293 (8th Cir.1972) (continuous wire tap found not to violate minimization requirement where the object of the investigation was an organized criminal conspiracy of large proportions), *cert. denied* 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974).

The investigation leading to the taps in question presented just this sort of challenge. As set out in a sixty-page wiretap application, the government's investigation concerned a massive criminal enterprise believed to exist among a large number of participants. The affidavit supporting the initial wiretap application specifically described the criminal activities of ten persons whose identities were unknown. Furthermore, as the district court noted, "[b]ecause the alleged conspirators used a colloquial code, it was difficult to determine which calls would be criminal in nature." J.A. at 680.

Defendants' complaint, insofar as they even try to give it concrete meaning, seems to revolve around the government's having (1) failed to "switch off the bug when a conversation plainly outside the scope of the wiretap order [began]," Brief for Appellants at 44, and (2) listened to and recorded conversations relating to crimes not specifically mentioned in its application and conducted by persons not mentioned by name. The second claim depends on the first, and both are without merit.

■ The fact that the monitored conversations often started with discussion of non-criminal matters did not require the government to plug its ears. Participants in the conspiracy under investigation often discussed personal and criminal matters in the same conversations. *See, e.g.,* J.A. at 665 (supervising agent notes the practice of such intermingling, illustrating it with observation that defendant Wilson "often began with discussion of personal subjects such as possible pregnancy or baby sitting duties, and thereafter turned to discussion of criminal activity such as welfare fraud."). Appellants' conversations were relatively short and the agents could rea-

sonably have believed that the subject of the conversation might turn at any moment to the criminal activities being investigated or that the participants would change and criminal activities would then be discussed. (Both of these possibilities occurred during the investigation.) In addition, the end parts of the conversations turned to new crimes, including welfare fraud, which the government specifically identified as a new area of search in an application to extend the investigation's scope.

Of course the government may not monitor without limit and still meet the minimization requirement. Here, in fact, the innocent beginnings of conversations led the agents to cut short their listening to 16 percent of the calls. Defendants have not seriously endeavored to show that there was any pattern of inadequate readiness to do so. Obviously a blanket rule that the agents must always turn off after X minutes of innocent conversation would create a privileged sanctuary for illegal conversations.

Minimization does not require such impractical forbearance. *See Scott v. United States,* 436 U.S. at 140, 98 S.Ct. at 1724 ("statute does not forbid the interception of all nonrelevant conversations"); *United States v. James,* 494 F.2d at 1019 (where participants discuss both innocent and criminal activity, agents may be justified in monitoring all conversations); *United States v. Cox,* 462 F.2d 1293, 1301 (8th Cir.1972) (" '[I]t is often impossible to determine that a particular telephone conversation would be irrelevant and harmless until it has been terminated.... It is all well and good to say, after the fact, that certain conversations were irrelevant and should have been terminated. However, the monitoring agents are not gifted with prescience and cannot be expected to know in advance what direction the conversation will take.' ") (quoting *United States v. La-Gorga,* 336 F.Supp. 190, 196 (W.D.Pa. 1971)).

This leaves defendants' second theory without support. The fact that neither appellants nor their crimes were identified in the initial wiretap application does not negate a finding of reasonableness in this case. One of the aims of the investigation itself was to identify participants in the conspiracy. *See United States v. James,* 494 F.2d at 1019 ("Identification of the contours of the conspiracy and the participants may be the government's principal objective.") (footnote omitted).

The district court's close monitoring of the conduct of the wiretap supports our finding that the government's surveillance was reasonable in this case. The assistant United States attorney in charge of the wiretap surveillance submitted detailed reports to Judge Oberdorfer every seven days. Where a court has required and reviewed interim reports from the investigating agents, a court is more likely to find the government's behavior reasonable. *See United States v. James,* 494 F.2d at 1021.

Accordingly, we uphold the district court's finding that the minimization requirement was satisfied in this case.

\*   \*   \*

The judgment is

*Affirmed.*