989 F.2d 496
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvin S. JACK, Defendant-Appellant.
 No. 92-5334.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: January 15, 1993
Decided: March 26, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove, District Judge. (CR-91-226-HAR)
 Mark L. Gitomer, CARDIN & GITOMER, P.A., Baltimore, Maryland, for Appellant.
 Richard D. Bennett, United States Attorney, Bonnie S. Greenberg, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL and HALL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Alvin S. Jack appeals from a district court judgment entered pursuant to a jury verdict finding him guilty of conspiring to import heroin with intent to distribute and importing heroin with intent to distribute, in violation of 21 U.S.C. §§ 952(a), 963 (1988) and 18 U.S.C. § 2 (1988). He contends that his conviction should be dismissed for a violation of the Speedy Trial Act, 18 U.S.C.A. # 8E8E # 3161-3174 (West 1985 & Supp. 1992). Jack also argues that the district court erred in its sentencing determinations of the amount of heroin involved in the offense and his role in the offense. Based on the facts presented in this case, we find no error and, therefore, affirm Jack's conviction and[1] sentence.
 
 I.
 
 2
 According to the government's evidence, Jack became involved in the summer of 1990 in a conspiracy to import heroin from Nigeria to Maryland through the use of alimentary canal smugglers. In late September 1990, on behalf of conspiracy head Paul Okolo, Jack traveled to Nigeria with George Eronini and Innocent Uwaeme. After swallowing balloon-encased "eggs" of heroin-Jack swallowed 450 grams of heroin, Uwaeme 479.6 grams, and Eronini 902.7 grams-they returned to the United States via different routes. Only Jack escaped arrest at that time. Upon delivery of the heroin to Okolo, Christian Kanu, and Raymond Obilo, Jack received a courier fee of $16,500. Although agreeing to supply Obilo with 250 to 500 grams of heroin per week, the conspiracy actually supplied Obilo with 500 to 1000 grams of heroin per month between October 1990 and March or April of 1991.
 
 
 3
 In January 1991, Jack recruited James Wright to smuggle heroin from Ghana (the "Ghana trip"). Jack "tested" Wright's ability to swallow the heroin balloons by having Wright swallow grapes and ice cubes. Jack told Wright that he had internally smuggled heroin on two previous occasions.[2] During meetings at his Camp Springs, Maryland, house, Jack instructed Wright and Bielby-Russ on the procedures to follow during the trip and methods to avoid detection by Customs officials. Jack was to be paid for his recruitment and training activities from profits derived from the Ghana trip. Jack also contacted Wright and Bielby-Russ while they were in Ghana in March 1991. When he learned of Wright and Bielby-Ross's return date, Jack visited Uwaeme at the Alexandria Detention Center and told Uwaeme about the Ghana trip so that Uwaeme could inform law enforcement officials and receive consideration for substantial assistance.[3] Based upon this information, Wright and Bielby-Russ were arrested at Dulles Airport and approximately 563.6 grams of heroin were recovered.
 
 
 4
 Additional evidence showed that Jack asked Kanu and Obilo to participate in a separate venture in which Jack would internally smuggle heroin and share in the profits derived therefrom. Jack had already traveled to Nigeria and telephoned Obilo from New York when Obilo was arrested.
 
 II.
 
 5
 In this case, the seventy-day Speedy Trial Act time period began to run on June 20, 1991, the day after Jack was originally indicted. 18 U.S.C. § 3161(c)(1)(1988). Jack contends that the delay in bringing his case to trial, which commenced 243 days later on February 18, 1992, requires the dismissal of the indictment. 18 U.S.C. § 3162(a)(2) (1988). We disagree.
 
 
 6
 While the district court's interpretation of the Speedy Trial Act and computation of exclusions thereunder are reviewed de novo on appeal, the findings of fact underlying its Speedy Trial Act determinations are subject to a clearly erroneous review. United States v. Gallardo, 773 F.2d 1496, 1500-01 (9th Cir. 1985). In this case, the court excluded seventeen days, the period from July 5, 1991, to July 22, 1991, allowed for the filing of pretrial motions, as delay "from other proceedings concerning the defendant." 28 U.S.C. § 3161(h)(1); see United States v. Wilson, 835 F.2d 1440, 1444 (D.C. Cir. 1987). The court also tolled the speedy trial clock for forty-three days, from July 22, 1991, to September 3, 1991, due to the additional time for pretrial motions granted pursuant to Jack's motion.[4] 18 U.S.C. § 3161(h)(1)(F); see Wilson, 835 F.2d at 1444. We find that these time periods were correctly excluded by the district court.
 
 
 7
 Jack's main concern is the district court's exclusion of the period between August 5, 1991, and January 17, 1992, during which codefendant Kanu's pretrial motions, including a motion to sever and motions to suppress various evidentiary materials, were pending. These motions were waived by Kanu on January 17, when he pled guilty to the superseding indictment, thereby obviating the need for the court's intended hearing on Kanu's motions. Thirty-two days of that 165-day pendency period are already excludable due to Jack's motion for additional time to file pretrial motions and motion for modification of bond release. The district court tolled the speedy trial clock as to Jack for the remaining 133 days unders 3161(h)(1)(F), because "[a] motion relating to one defendant tolls the speedy trial clock for all other co-defendants." United States v. Vasser, 916 F.2d 624, 626 (11th Cir. 1990), cert. denied, 59 U.S.L.W. 3742 (U.S. 1991).
 
 
 8
 "The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not." Henderson v. United States, 476 U.S. 321, 326 (1986). We find that, contrary to Jack's arguments, the full period of the pendency of Kanu's motions is properly excludable, regardless of the merits of those motions, see United States v. Morales, 875 F.2d 775, 777 (9th Cir. 1989), or the underlying reason for the delay in the court's ruling thereon. Henderson, 476 U.S. at 330. Because there were only forty-three non-excludable days between June 20, 1991, and February 18, 1992, Jack was brought to trial within the requisite seventy-day period and there is no basis for the dismissal of the indictment.
 
 III.
 
 9
 Jack argues that the district court erroneously determined that three to five kilograms of heroin were involved in the offense and that Jack was a manager or supervisor in a criminal activity that involved five or more people. A sentencing court's factual determinations must be based upon a preponderance of the evidence, McMillan v. Pennsylvania, 477 U.S. 79 (1986), and are reviewed for clear error. United States v. Arnoldt, 947 F.2d 1120, 1128 (4th Cir. 1991) (role in offense), cert. denied, 60 U.S.L.W. 3716 (U.S. 1992); United States v. Mark, 943 F.2d 444, 450 (4th Cir. 1991) (drug quantity).
 
 
 10
 In calculating the amount of heroin for purposes of establishing a base offense level, the court first found that Jack personally imported 700 grams of heroin in September and November 1990.[5] Because of Jack's direct involvement with Uwaeme, Eronini, Wright, and BielbyRuss, the court also included the 1382.3 grams of heroin seized from Uwaeme and Eronini during their September 1990 arrests and the approximately 563.6 grams of heroin imported during the Ghana trip. U.S.S.G. § 1B1.3, comment (n.1) (Nov. 1991); United States v. Campbell, 935 F.2d 39, 46 (4th Cir.), cert. denied, 60 U.S.L.W. 3309 (U.S. 1991). Finally, the court found that the full extent of the conspiracy's 500 to 1,000 grams-per-month distribution network was known or could reasonably have been foreseen by Jack. United States v. Richardson, 939 F.2d 135, 141-42 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3498 (U.S. 1992); United States v. Vinson, 886 F.2d 740, 742 (4th Cir. 1989), cert. denied, 493 U.S. 1062 (1990). These calculations easily exceed the floor of three kilograms for a base offense level of 34 under § 2D1.1 and, based upon the evidence presented, we cannot find the court's calculations clearly erroneous.
 
 
 11
 As to Jack's role in the offense, we find that the district court properly considered such factors as the nature of Jack's participation in the offense, his recruitment of Wright for the Ghana trip, his right to a share of the fruits of the Ghana trip as compensation for his recruitment and training activities, the degree of his participation in the planning or organizing of the Ghana trip, the nature and scope of the conspiracy, and the degree of control and authority he exercised over Wright and Bielby-Ross. See U.S.S.G. § 3B1.1(b), comment (n.3). The court also properly considered the fact that Jack provided his residence as a headquarters for the organization of the Ghana trip. See United States v. Paz, 927 F.2d 176, 180 (4th Cir. 1991). We also find that the enterprise involved more than five participants, including Obilo, Okolo, Kanu, Uwaeme, Eronini, Wright, Bielby-Russ, and the unnamed Nigerian sources. The district court's factual determination for purposes of sentencing were not clearly erroneous.
 
 IV.
 
 12
 For the reasons stated herein, we affirm Jack's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 We grant Jack's motion to file a supplemental pro se brief. However, we find that the additional issues raised in Jack's brief, the admission of evidence of criminal acts underlying the plea agreement of a testifying coconspirator and the government's use of convicted perjurers and persons who have committed perjury in previous trials as witnesses, cannot be the basis for reversible error on appeal because of Jack's failure to object thereunto at time of trial. Fed. R. Evid. 103(a)(1). Moreover, these issues are without substantive merit. See United States v. Werme, 939 F.2d 108, 114 (3d Cir. 1991) (plea agreement of government witness may be elicited on direct examination), cert. denied, 60 U.S.L.W. 3578 (U.S. 1992); Schoppel v. United States, 270 F.2d 413, 416 (4th Cir. 1959) (convicted perjurers are competent to testify in federal court)
 
 
 [2]
 This statement was corroborated by Jack's passports, noting trips to Nigeria on September 20, 1990, and November 4, 1990, and statements to Wright and Emmett Bielby-Russ, the other courier for the Ghana trip, by the Nigerian heroin sources they met in Ghana concerning Jack's ability to swallow large quantities of heroin on his two previous trips
 
 
 [3]
 Uwaeme was dating Jack's sister at the time
 
 
 [4]
 Although not considered by the district court, we find that Jack's August 26, 1991, motion for modification of the conditions of his bond release, which was denied by the court on September 6, 1991, caused an additional three-day tolling period. 18 U.S.C. § 3161(h)(1)(F); see United States v. Davenport, 935 F.2d 1223, 1231 (11th Cir. 1991). We also find that four days, from February 14, 1992, to February 18, 1992, are excludable due to Jack's pretrial motion to dismiss the indictment for an alleged Speedy Trial Act violation. 18 U.S.C. § 3161(h)(1)(F); Wilson, 835 F.2d at 1444
 
 
 [5]
 Because no evidence was proffered as to the amount of heroin imported by Jack during the November trip, the court estimated that Jack imported at least 250 grams at that time. United States Sentencing Commission, Guidelines Manual, § 2D1.4, comment (n.2) (Nov. 1991) ("Where there is no drug seizure ..., the sentencing judge shall approximate the quantity of the controlled substance."). This estimate was based on the amount imported by Wright in March 1991, that is 250 grams, and the statements by the Nigerian heroin sources to Wright during the Ghana trip that Jack had swallowed a greater amount of heroin in November