September 14, 1995
UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 94-1858

UNITED STATES OF AMERICA,

Appellee,

v.

GERALD RODRIGUEZ, a/k/a/ JOSE RODRIGUEZ,

Defendant, Appellant.



ERRATA SHEET

The opinion of this Court issued on August 28, 1995 is corrected
as follows:

On page 12, second paragraph, line 5, substitute "defaults" for
"defalcates."

United States Court of Appeals
For the First Circuit



No. 94-1858

UNITED STATES OF AMERICA,

Appellee,

v.

GERALDO RODRIGUEZ, a/k/a JOSE RODRIGUEZ,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge] 
[Hon. Francis J. Boyle, Senior U.S. District Judge] 



Before

Selya, Cyr and Lynch, Circuit Judges. 



Andrew Grosso for appellant. 
Mervyn Hamburg, Senior Counsel, United States Department of 
Justice, with whom Sheldon Whitehouse, United States Attorney, was on 
brief for the United States.



August 28, 1995


LYNCH, Circuit Judge. Geraldo Rodriguez seeks to LYNCH, Circuit Judge. 

set aside his conviction for conspiracy to distribute heroin,

contending that he was not brought to trial within the 70

days prescribed by the Speedy Trial Act ("STA"), 18 U.S.C.

3161 et seq., and that two evidentiary rulings at trial 

were in error. Rodriguez also appeals his sentence,

contending that the district court engaged in impermissible

"double counting" when it departed upward based on the purity

of the heroin he was convicted of conspiring to distribute

while simultaneously enhancing his sentence for his

leadership role. The conviction and sentence are affirmed.

I. Background 

Geraldo "Jose" Rodriguez and his co-defendant

Juvenal Grajales arranged the sale of a total of 97.65 grams

of very pure heroin (87% to 96% pure) to a DEA confidential

informant named Miguel Teixeira on four occasions in February

and April, 1993. Teixeira recorded his conversations with

Rodriguez about the particulars of these drug deals at a

number of pre-arranged meetings. At some of the meetings,

Rodriguez was accompanied by Grajales or other associates; at

others, Rodriguez sent associates to assist with or

consummate the transactions.

Rodriguez and Grajales were arrested and indicted

for distribution of heroin, distribution of cocaine, and

conspiracy to possess heroin and cocaine with intent to

-2- 2

distribute. Following a period of pretrial motion practice

and discovery (set forth in the Appendix that follows this

opinion), trial was scheduled for September 23, 1993. On

September 22, 1993, the district court accepted a guilty plea

from Grajales. On September 23, a jury was empaneled (but

not sworn) in Rodriguez's case and trial was set to begin on

September 30, 1993. On that day, before the jury was sworn,

Rodriguez disputed the adequacy of the government s

disclosures concerning the background of its key witness

Teixeira, the DEA informant. Rodriguez demanded that he be

provided with additional information. The district court,

accommodating Rodriguez s position, dismissed the jury and

adjourned the trial pending resolution of the discovery

issue.

Some two weeks later, on October 19, 1993,

Rodriguez's trial counsel filed a motion to withdraw from the

case. The motion was granted after hearing, and the court

allowed Rodriguez time to obtain new counsel. In November,

Rodriguez's newly retained counsel Barry Wilson filed an

appearance and, later, a motion for admission pro hac vice in 

the District of Rhode Island. This proved problematic.

Based on a contempt order that had been issued against Wilson

in an unrelated matter before Judge Pettine, the government

opposed the pro hac vice motion. A hearing was not held on 

the motion until February 22, 1994. The motion was allowed.

-3- 3

That same day Rodriguez filed a motion to dismiss

the indictment on grounds that he had not been brought to

trial within 70 days as required by the STA. That motion was

later denied in a bench ruling.

Trial commenced on May 12, 1994. At the close of

the government's case, the district court granted Rodriguez's

motion for judgment of acquittal with respect to Count 2 of

the indictment, which charged conspiracy to distribute

cocaine. At the conclusion of the five-day trial, the jury

returned a guilty verdict on Count 1 (conspiracy to

distribute heroin) but acquitted Rodriguez on all other

counts (distribution of heroin; distribution of cocaine).

At sentencing, after concluding that both a two-

level leadership role enhancement and an additional two-level

drug-purity upward departure were warranted, the district

court imposed a sentence of 121 months imprisonment to be

followed by 5 years supervised release, and a $50 special

assessment.

II. Speedy Trial Act Claim 

Rodriguez's STA claim raises questions of whether

certain time consumed in connection with pretrial motions and

jury empanelment is excludable from the requisite STA

calculations. Factual findings underlying a STA

determination are reviewed for clear error, while legal

rulings are reviewed de novo. See United States v. Storm, 36 

-4- 4

F.3d 1289, 1292 (5th Cir. 1994), cert. denied, 115 S. Ct. 

1798 (1995); United States v. Henderson, 746 F.2d 619, 622 

(9th Cir. 1984), aff'd, 476 U.S. 321 (1986). 

The STA requires that a defendant be tried within

70 days of the filing of the indictment or the defendant's

first appearance before a judicial officer, whichever occurs

later. See Henderson v. United States, 476 U.S. 321, 322 

(1986). The remedy for violation of the 70-day requirement

is dismissal of the indictment either with or without

prejudice, depending on consideration of several statutory

factors. See 18 U.S.C. 3162(a)(2); United States v. 

Ramirez, 973 F.2d 36, 39 (1st Cir. 1992). Not every day that 

passes between indictment or appearance and trial, however,

counts toward the 70-day limit. The Act itself enumerates

various circumstances that can suspend the running of the

time. See 18 U.S.C. 3161(h). The question presented is 

whether the total amount of non-excludable time between

indictment or judicial appearance and the filing of the

pretrial motion suggesting a STA violation exceeded the

statutory limit of 70 days.

The metaphor of a running clock is often used in

STA cases. The metaphorical clock here started running on

June 4, 1993, the day after the indictment, and stopped on

February 22, 1994, the day Rodriguez filed his speedy trial

motion, which was not renewed before trial. See United 

-5- 5

States v. Connor, 926 F.2d 81, 84 (1st Cir. 1991) ("[A] 

motion for dismissal [under the STA] is effective only for

periods of time which antedate the filing of the motion.

Subsequent periods of delay, whether includable or

excludable, are inconsequential.").

There is no dispute that three days devoted to

miscellaneous proceedings concerning Rodriguez are

excludable.* The battle lines are thus drawn around the

remaining period of 260 days, and the question is whether at

least 190 of those days were excludable. The answer is yes.

Much of Rodriguez's attack focuses on time

associated with pretrial motions. The ground rules are set

by the statute and Supreme Court case law. Section

3161(h)(1) of the Speedy Trial Act provides for the exclusion

of any

(F) delay resulting from any
pretrial motion, from the filing of the
motion through the conclusion of the
hearing on, or other prompt disposition
of, such motion; [and]
. . .
(J) delay reasonably attributable to
any period, not to exceed thirty days,
during which any proceeding concerning
the defendant is actually under
advisement by the court.

18 U.S.C. 3161(h)(1)(F), (J).

 

*The parties agree that the following days are excludable under 18
U.S.C. 3161(h)(1): the day of arraignment (June 14, 1993), the day
on which Rodriguez's co-defendant Grajales submitted a guilty plea
(September 22, 1993); and the day on which the first jury was
empaneled (September 23, 1993).

-6- 6

There are significant differences in the

excludability of delays attributable to motions afforded

hearings and those decided without hearing. Such differences

result from the interplay between subsections (F) and (J).

In Henderson v. United States, 476 U.S. 321 (1986), the 

Supreme Court held that under subsection (F), the entire 

period beginning from the filing of a pretrial motion to the

conclusion of the hearing on that motion is excludable time.

See id. at 328-31; see also United States v. McAfee, 808 F.2d 

862, 864 (1st Cir. 1986). Once the hearing on the motion is

concluded, subsection (J) limits the amount of excludable

time while the motion is "under advisement" to 30 days. See 

Henderson, 476 U.S. at 328-329; United States v. Ortiz, 23 

F.3d 21, 27 & n.6 (1st Cir. 1994); United States v. Wilson, 

835 F.2d 1440, 1442 (D.C. Cir. 1987).

When there is no hearing, a motion is deemed to be

taken under advisement when "the court receives all the

papers it reasonably expects . . . ." Henderson, 476 U.S. at 

329; see also United States v. Johnson, 29 F.3d 940, 944 (5th 

Cir. 1994). Thus, for a motion that does not receive a

hearing, subsections (F) and (J) in conjunction allow for the

exclusion of all of the time from the filing of the motion to

the time that the court receives all reasonably expected

papers, plus no more than an additional 30 days of advisement

time. See Johnson, 29 F.3d at 944; see also Wilson, 835 F.2d 

-7- 7

at 1442 ("[Sections 3161(h)(1)(F) and (J)] taken together

thus exclude the time between filing of a motion and the date

it is taken under advisement by the court, plus the time

during which the court holds the motion under advisement (up

to 30 days).").

The chronology against which the STA clock runs and

stops according to these rules in this case is set forth in

the Appendix. Pursuant to Henderson and 3161(h)(1)(F) & 

(J), the entire 75-day period from the December 10, 1993

filing of the pro hac vice motion of his new counsel until 

the hearing on that motion (February 22, 1994) is

excludable.** The date on which the motion was filed and

the date on which it was heard are also excludable days.

United States v. Papaleo, 853 F.2d 16, 21 (1st Cir. 1988). 

 

**There is some confusion in the briefs and in the record as to when
Barry Wilson's pro hac vice motion actually was filed. For purposes 
of this appeal, we assume the motion was filed on December 10, 1993,
the date indicated on the district court docket sheet. It bears
comment, however, that more than 45 days passed between the time that
the district court granted the motion of Rodriguez's former counsel to
withdraw from the case and the filing of the pro hac vice motion  
even though the court had expressly ordered Rodriguez to obtain new
counsel within 10 days of the withdrawal. Although new counsel
purported to file an "appearance" on November 4, 1993, that appearance
was plainly in violation of the district court's local rules. See 
D.R.I. Loc. R. 5(c) (permitting appearance of non-member of bar only
on admission pro hac vice). Conceivably, either the November 4 
"appearance" by Wilson or the December 1 appearance by local counsel
on behalf of Wilson could be treated functionally as the date on which
the pro hac vice motion was filed. In any case, there is substantial 
reason to doubt whether the STA clock was running during the 35 days
that Rodriguez, in violation of the court's order, delayed in
retaining appropriate counsel of record. For purposes of this appeal,
however, we put that issue to one side.

-8- 8

Similarly, the bail motion filed on October 13, 1993 (which

did not receive a hearing nor, apparently, an express ruling)

resulted in at least an additional 30 days of excludable

time. See Ortiz, 23 F.3d at 27 n.6 (pretrial motion to which 

no opposition was filed, which did not receive hearing, and

was never ruled upon created at least 30 days of excludable

time); see also Johnson, 29 F.3d at 945 (same). Excluding 

the delays attributable to these motions reduces the STA

count to 155 days.

The events that unfolded in late September, 1993

further reduce the count. On September 23, 1993, Rodriguez's

case was called to trial, and a jury was empaneled, but not

sworn. One week later, as the trial was about to begin in

earnest, a last-minute discovery wrangle caused the still-

unsworn jury to be dismissed and the trial to be postponed.

The issue is how to treat the one-week interim between the

jury's empanelment and its unexpected dismissal.

It is settled that trial generally "commences" for

Speedy Trial Act purposes on the day the jury is empaneled,

even if not sworn. See Government of Virgin Islands v. 

Duberry, 923 F.2d 317, 320 (3d Cir. 1991) (STA is not 

violated so long as jury selection occurs within the 70-day

period, even if swearing occurs outside the period), cert. 

denied, 115 S. Ct. 370 (1994); United States v. Fox, 788 F.2d 

905, 908-09 (2d Cir. 1986) (same); United States v. Scaife, 

-9- 9

749 F.2d 338, 343 (5th Cir. 1984) (same); United States v. 

Manfredi, 722 F.2d 519, 524 (9th Cir. 1983) (same); United 

States v. Gonzalez, 671 F.2d 441 (11th Cir.), cert. denied, 

456 U.S. 994 (1982); cf. United States v. Rojo-Alvarez, 944 

F.2d 959, 965 (1st Cir. 1991) (dictum) (suggesting that the

STA clock was "definitively stopp[ed]" when jury was

empaneled); United States v. Zayas, 876 F.2d 1057, 1058 (1st 

Cir. 1989) (noting the parties' agreement that STA is not

violated if jury empanelment occurs within the 70-day period

even if actual trial commences outside the period, so long as 

the empanelment is not "pretextual"). Here, as far as the

record reflects, the parties and the court expected as of

September 23 that, following a brief recess of one week, the

empaneled jury would be sworn and that opening arguments and

testimony would get underway on September 30. Arguably, the

September 23, 1993 jury empanelment ended the running of STA

time. Cf. Duberry, 923 F.2d at 320 ("The Speedy Trial Act 

does not require that once a trial commences it continue

without interruption . . . ."). Before September 30 the

parties and the court had every reason to believe that the

STA clock had ceased ticking on September 23. In these

circumstances, we conclude that, at a minimum, the STA clock

did not run during the 6-day interim between the jury's

empanelment and its dismissal. Subtracting this time brings

the STA tally to 149 days.

-10- 10

We turn next to the proceedings of September 30

that unexpectedly halted the trial. That day, before the

jury was sworn, Rodriguez's counsel raised discovery issues

with the trial judge, contending that the government's

disclosure of information concerning its key witness

(Teixeira) had been sorely inadequate. Rodriguez asked that

the court order the government to produce additional

information. The district court, apparently seeing merit in

Rodriguez's claim, decided to dismiss the jury. Defense

counsel then asked the district court, "Judge, will it be

necessary to file a more detailed request . . .?" The court

replied, "Well, you take the time you need and study the

problem, then let me know what you need, all right?" Twelve

days later, on October 12, 1993, Rodriguez filed a "Motion

for Exculpatory Evidence" concerning Teixeira.

Rodriguez's request for additional information at

the September 30, 1993 proceedings was an oral motion for

supplemental discovery, which triggered the exclusionary

provisions of 3161(h)(1)(F). See United States v. Noone, 

913 F.2d 20, 27 (1st Cir. 1990) (an oral motion no less than

a written one creates excludable time under 3161(h)(1)(F)),

cert. denied, 500 U.S. 906 (1991); accord United States v. 

Pasquale, 25 F.3d 948, 950-51 (10th Cir. 1994); United States 

v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993); United States v. 

Louis, 814 F.2d 852, 857 (2d Cir. 1987). Alternatively, the 

-11- 11

period between Rodriguez's September 30 oral request and the

filing of his October 12 written motion can be viewed as time

set aside by the district court as motion preparation time,

which also would be excludable under 3161(h)(1). See 

United States v. Jodoin, 672 F.2d 232, 238 (1st Cir. 1982) 

(allowing STA exclusion for period between defendant's oral

request for time to file motion and actual filing of motion);

cf. United States v. Barnes, 909 F.2d 1059, 1064-65 (7th Cir. 

1990) (recognizing excludability of time designated by

district court as motion preparation time). Either way, the

entire 13-day period from September 30, 1993 through October

12, 1993 is excludable time. In light of this conclusion, we

need not address whether the adjournment resulting from the

September 30 proceedings would be excludable as an "ends of

justice" continuance under the STA. Had the district court

so intended, however, it would have been preferable for it to

have made an express finding on the record, as directed by

the statute, explaining why the "ends of justice served by

the granting of such continuance outweigh[ed] the best

interests of the public and the defendant in a speedy trial."

18 U.S.C. 3161(h)(8)(A); see United States v. Bruckman, 874 

F.2d 57, 62 (1st Cir. 1989) (encouraging district courts to

make the requisite findings, but noting that in some

circumstances, failure to state the findings for the record

does not preclude excludability). In any event, subtracting

-12- 12

the time between the September 30 adjournment and the filing

of the October 12 discovery motion brings the STA tally to

136 days.***

There remains at least one additional source of

excludable time the discovery motion Rodriguez filed on

June 16, 1993. Determining how much excludable time to

attribute to this motion presents a novel question in this

Circuit: how to treat a delay when the government defaults on

its obligation to respond to a defendant's motion by a court-

ordered deadline. Rodriguez's motion was filed on June 16,

1993 and did not receive a hearing. The magistrate judge

overseeing the pretrial proceedings had ordered the

government to file any opposition by July 23, 1993. Yet,

inexplicably, the government's opposition was not filed until

September 2, 1993. The government has not disputed that its

opposition was untimely; nor has it pointed to anything in

the record that would justify the delay. Still, citing

Henderson, the government contends that all of the time from 

the filing of the June 16, 1993 motion to the filing of its

untimely response on September 2, 1993, plus an additional 30 

days of advisement time, should be deemed excludable under

3161(h)(1)(F) and (J). Rodriguez disagrees, asserting that

 

***Because the period of excludable time attributable to the
October 12, 1993 written motion wholly overlaps the period
independently excluded by virtue of the October 13, 1993 bail
motion, the October 12 motion does not result in any extra
excludable time, except for the single day of October 12.

-13- 13

the excludable time should be limited to the period from June

16 to July 23 (the date on which the government's opposition

was due), plus an additional 30 days of advisement time after 

that due date.

There are considerable reasons to credit

Rodriguez's position. The government's broad reading of

Henderson is hardly sensitive to the purposes of the STA. To 

be sure, Henderson creates an expansive rule of exclusion for 

delays attributable to the hearing of pretrial motions. But

we doubt that Henderson or the Speedy Trial Act itself would 

permit treating as excludable time an extended delay

attributable solely to the government's unexcused failure to

comply with a court-ordered briefing schedule. The dangers

of potential abuse lurking behind such a broad rule of

exclusion are plain.

A more sensible rule might provide for the

termination of excludable time under 3161(h)(1)(F) upon the

due date of the opposition to a defendant's pretrial motion 

that does not receive a hearing, absent circumstances that

would reasonably justify a late filing. The Seventh Circuit

adheres to just such a "due date" rule. See United States v. 

Thomas, 788 F.2d 1250, 1259 (7th Cir.), cert. denied, 479 

U.S. 853 (1986); see also United States v. Baskin-Bey, 45 

-14- 14

F.3d 200, 203 (7th Cir. 1995), cert. denied, 115 S. Ct. 1809 

(1995).**** Under that court's approach, a pretrial

motion that does not receive a hearing is deemed to be "under

advisement" on the date the government's response is due,

even if the response has not actually been filed. See 

Thomas, 788 F.2d at 1259. Thus, as of the due date in the 

Seventh Circuit, 3161(h)(1)(F) ceases to create excludable

time for a motion that receives no hearing, and the 30-day

period of excludable "advisement" time under 3161(h)(1)(J)

begins; after that 30-day period, the STA clock begins to run

again. See id. 

The Thomas rule is commended by fairly obvious 

considerations of policy. See Thomas, 788 F.2d at 1259 ("If 

the entire period [of delay attributable to a government's

late filing] were excluded, a prosecutor could obtain

indefinite exclusions of time by the expedient of not

responding to . . . motions. That would undercut the

structure of the Speedy Trial Act."). For several reasons,

however, we leave for another day whether to adopt the Thomas 

"due date" rule as the law of this Circuit. First and

foremost, we need not decide definitively whether to adopt

 

****The Fifth Circuit appears to differ. See United States 
v. Martinez-Mercado, 888 F.2d 1484, 1493 (5th Cir. 1989) 
(rejecting appellant's contention that Speedy Trial Act does
not exclude time between due date of government's response
under local rules and actual filing date). The Second
Circuit has left the question open. See United States v. 
Adeniji, 31 F.3d 58, 66 (2d Cir. 1994). 

-15- 15

the "due date" rule in this case, because even applying that

rule, the number of non-excludable days within the relevant

STA period is less than 70: between the filing of the June 16

motion and the due date of the opposition (July 23) fell 38

days excludable under 3161(h)(1)(F). Adding 30 days of

excludable "under advisement" time pursuant to

3161(h)(1)(J), the total excludable time attributable to

the June 16 motion under the "due date" rule would be 68

days. Subtracting this time from the STA tally reduces the

count to 68 days, under the 70-day limit. Second, the record

before us is unclear as to whether there were in fact any

reasons for the government's late filing. Third, it is not

evident that Rodriguez ever brought the untimeliness of the

government's opposition to the district court's attention.

Cf. United States v. Welborn, 849 F.2d 980, 986-87 (5th Cir. 

1988) (expressing concern that the Seventh Circuit's "due

date" rule might "permit a defendant to remain silent after a

deadline imposed on the prosecution had elapsed and permit a

Speedy Trial Act violation to accrue without notice to the

prosecution or the court").

Finally, we reject Rodriguez's assertion that his

June 16 motion did not generate any excludable time from June

16 to July 13. His argument purports to be built upon 18

U.S.C. 3161(c)(2), which some courts have understood to

prohibit commencement of a trial sooner than 30 days after a

-16- 16

defendant's arraignment or indictment. See, e.g., United 

States v. Daly, 716 F.2d 1499, 1504-05 (9th Cir. 1983), cert. 

dismissed, 465 U.S. 1075 (1984). From this reading of 

3161(c)(2), Rodriguez argues that his trial could not have

commenced before July 14, 1993 and that his June 16 motion

therefore could not have produced any actual "delay" and

hence no excludable time before that date. Whether or not

Rodriguez's suggested construction of 3161(c)(2) is

correct, his argument is unavailing. The argument rests on

the premise that a motion which causes no actual delay of a

trial date does not trigger 3161(h)(1). However, it is

clear in this Circuit as in others that the exclusions of

3161(h)(1)(F) and (J) are "automatic," and do not depend

upon any showing of actual delay. See United States v. Rush, 

738 F.2d 497, 502 (1st Cir. 1984), cert. denied, 470 U.s. 

1004 (1985); see also United States v. Montoya, 827 F.2d 143, 

151 (7th Cir. 1987); United States v. Velasquez, 802 F.2d 

104, 105 (4th Cir. 1986); United States v. Novak, 715 F.2d 

810, 813 (3d Cir. 1983), cert. denied, 465 U.S. 1030 (1984). 

To summarize, the following periods of time are

excludable under 3161(h): the single day of June 14, 1993

(arraignment); at least 68 days following the filing of

Rodriguez's discovery motion on June 16, 1993; the single day

of September 22, 1993 (co-defendant's submission of plea);

the 7-day period from September 23 through September 29, 1993

-17- 17

(jury empanelment and trial "commencement"); at least 30 days

following the September 30, 1993 oral request for additional

discovery; the 13 of the 30 days following the October 13,

1993 bail motion that do not overlap with the time excluded

for the September 30 oral motion; and the 75-day period

between the December 10, 1993 pro hac vice motion and the 

hearing on that motion. Excluding these 195 days from our

starting count of 263 leaves only 68 nonexcludable days.

We need go no further. The district court did not

err in denying Rodriguez's motion to dismiss the indictment

for violation of the STA.

III. Evidentiary Issues 

A. Admissibility of Audiotape 

Teixeira, the government's testifying informant,

taped his meetings with Rodriguez using a concealed recording

device. A total of eight tapes were admitted into evidence

at trial. Rodriguez contends that the district court's

admission of one of these tapes (Gov. Exhibit 7) was 

reversible error, for three reasons: (1) the tape, which

purported to be a recording of a meeting between Teixeira and

Rodriguez on February 19, 1993, was not properly

authenticated; (2) the tape contains hearsay statements by

Teixeira; and (3) the tape contains some words spoken in

Spanish, creating a danger of jury confusion.

-18- 18

There was no abuse of discretion in admitting the

tape over Rodriguez's authenticity objection. See United 

States v. Font-Ramirez, 944 F.2d 42, 46-47 (1st Cir. 1991), 

cert. denied, 502 U.S. 1065 (1992). First, Teixeira 

identified it as the tape he recorded during a meeting with

Rodriguez on February 19, 1993, and Teixeira stated that the

tape fairly and accurately reflected that meeting. Teixeira

further testified that he had listened to the tape and

verified that his own voice was on it. Other government

witnesses confirmed that Teixeira met with defendant on the

relevant date, that Teixeira was wired to record the relevant

meeting, that Teixeira gave the tape to the DEA surveillance

team following the meeting, and that the tape passed through

a clean chain of custody preceding trial. Cf. United States 

v. Rengifo, 789 F.2d 975, 978 (1st Cir. 1986) (holding that 

tape can be properly authenticated by someone other than

participant in the recorded conversation). Rodriguez offered

no evidence that the tape was somehow inaccurate or had been

altered. See United States v. Carbone, 798 F.2d 21, 24 (1st 

Cir. 1986).

Rodriguez's other objections to admission of the

tape also fail. His hearsay objection falters because he did

not make it at trial, arguing only a foundation objection

there. Admission of the tape was not plain error. His final

claim, that the presence of some Spanish words on the tape

-19- 19

created a danger that some of the jurors might have tried to

act as interpreters for other jurors, is sheer speculation

and provides no basis for reversal.

Any alleged error in admitting the tape was

harmless in any event. The jury acquitted defendant of all 

counts except for the count charging conspiracy to distribute

heroin. There was a wealth of evidence to support a

conviction on that count that had nothing to do with the

disputed tape, including Teixeira's live testimony, the

testimony of other surveilling officers, and several other 

tape recorded conversations between Teixeira and Rodriguez

whose admissibility are not challenged here.

B. Limitation of Impeachment Evidence 

During cross-examination of Teixeira at trial,

Rodriguez's counsel exposed the fact that in January, 1993 

shortly before the start of the operation that led to

defendant's arrest Teixeira had been convicted of perjury.

As Rodriguez s counsel explored this skeleton in Teixeira s

closet, there arose some question about precisely when

Teixeira had served the 90-day home confinement sentence that

had attached to his conviction. Teixeira testified that he

had already served his sentence as of the date of Rodriguez's

trial (May 1994), but could not remember exactly when.

Rodriguez, in presenting his own case, called Teixeira's

probation officer to the stand. His testimony suggested that

-20- 20

Teixeira had not in fact served his home confinement sentence

by May 1994. Seeking further to impeach Teixeira s already

damaged credibility, Rodriguez then moved for production of

certain correspondence in the possession of Teixeira's

probation officer that might indicate exactly when Teixeira

had served his 90-day sentence. The court denied Rodriguez's

request for the probation documents.

The district court's decision not to let Rodriguez

pursue the collateral question of when Teixeira had served

his perjury sentence is unassailable. The court had already

permitted Rodriguez ample opportunity to impeach Teixeira,

and it is unlikely that the probation documents would have

added anything to the jury s ability to assess Teixeira s

truthfulness. The district court has broad discretion to

limit the extent to which a defendant is permitted to impeach

a witness, see United States v. Fortes, 619 F.2d 108, 118 

(1st Cir. 1980), and there was no abuse of that discretion

here. See United States v. Tejada, 886 F.2d 483, 488 (1st 

Cir. 1989).

IV. Sentencing Issues 

The district court added a two-level adjustment to

Rodriguez's base offense level in view of his role as a

manager, supervisor, or leader of criminal activity.

U.S.S.G. 3B1.1(c). This enhancement resulted in a total

offense level of 28, which yielded (given a criminal history

-21- 21

category of I), a guidelines sentencing range of 78-97

months. The court then departed upward from that range (by

the equivalent of two offense levels) pursuant to U.S.S.G.

2D1.1, comment. (n.9) and 5K2.0, in consideration of the

unusually high purity of the drugs that defendant had been

dealing. Consequently, the court imposed a sentence of

imprisonment of 121 months.

Rodriguez's claim that there was insufficient

evidence to support a finding that he played a leadership

role for purposes of U.S.S.G. 3B1.1(c) is without merit.

The district court s finding, made with the benefit of all of

its observations at trial, is entitled to, and is given here,

considerable deference. See United States v. Andujar, 49 

F.3d 16, 25 (1st Cir. 1994). We see no basis for declaring

that finding to be clearly erroneous.

Rodriguez s next complaint, that he received a

substantially heavier sentence than his co-defendant

Grajales, is also without merit. Absent misapplication of

the Guidelines, the mere fact of the disparity is of no

consequence. See United States v. Wogan, 938 F.2d 1446, 

1448-49 (1st Cir.), cert. denied, 502 U.S. 969 (1991). 

Besides, the difference is easily explained. Rodriguez,

unlike Grajales (who pleaded guilty before trial) was

sentenced against the backdrop of a full trial record that

exposed in sharp focus the complete extent of his criminal

-22- 22

behavior. Cf. United States v. Rodriguez-Cardona, 924 F.2d 

1148, 1160-61 (1st Cir.), cert. denied, 502 U.S. 809 (1991). 

Rodriguez s final complaint is that his sentence

was twice enhanced for the same or similar aspects of his

criminal conduct through the simultaneous imposition of the

leadership-role enhancement and the drug-purity upward

departure. Rodriguez focuses this double-counting argument

on application note 9 to U.S.S.G. 2D1.1, which explains

that a drug's high purity "is probative of the defendant's

role or position in the chain of distribution." U.S.S.G.

2D1.1, comment. (n. 9). From this language, Rodriguez

argues that an upward departure based on drug purity is

duplicative of a leadership role enhancement.

In this case however, the district court's finding

of leadership role did not depend upon an inference from

heroin purity. Rather, the court found directly that

Rodriguez "used his mules and lackeys to make deliveries for

him and [that] he exercised leadership in some of these

deliveries by using underlings." Thus, the leadership-role

enhancement was notdriven by any consideration ofdrug purity.

Furthermore, application note 9 does not say that

drug purity and a defendant's leadership role are mutually

exclusive sentencing considerations. The application note

specifically states that "[t]rafficking in controlled

substances . . . of unusually high purity may warrant an

-23- 23

upward departure," U.S.S.G. 2D1.1, comment. (n.9) (emphasis 

added), not that high purity can provide a basis for the

leadership role adjustment set forth in 3B1.1(c).

Moreover, the notion of "leadership role" in 3B1.1(c) is

neither conceptually nor factually equivalent to the notion

of "role or position in the chain of distribution" referred

to in 2D1.1 application note 9. This court has in fact

previously affirmed a similar combination of upward

adjustments. See United States v. Diaz-Villafane, 874 F.2d 

43 (1st Cir. 1989), cert. denied, 493 U.S. 862 (1989). There 

was no error in the calculation of Rodriguez s sentence.

Affirmed. 

-24- 24

APPENDIX

Pretrial Chronology 

Jun. 3, 1993 Indictment.

Jun. 14, 1993 Arraignment. Magistrate judge issues
scheduling order directing, inter alia, that 
defendant file any pretrial motions by July
13, 1993, and that government file any
responses by July 23, 1993.

Jun. 16, 1993 Rodriguez files motion for discovery and
disclosure. Due date of government's
opposition is July 23, 1993; but opposition is
not filed until Sept. 2, 1993.

Sep. 2, 1993 Government responds to motion filed by
Rodriguez on June 16, 1993.

Sep. 22, 1993 Co-defendant Grajales submits guilty plea;
district court accepts plea.

Sep. 23, 1993 Initial jury in Rodriguez's case is selected
but not sworn.

Sep. 30, 1993 Before jury is sworn, Rodriguez requests
disclosure by government of additional
information concerning its key witness. Jury
is dismissed and Rodriguez's trial is
postponed pending resolution of discovery
issues.

Oct. 12, 1993 Rodriguez files "Motion for Exculpatory
Evidence."

Oct. 13, 1993 Rodriguez files motion to reconsider bail.

Oct. 19, 1993 Rodriguez's counsel files motion to withdraw.

Oct. 25, 1993 Hearing held on motion to withdraw; the court
allows the motion. Court gives Rodriguez 10
days to obtain new counsel.

Nov. 4, 1993 Rodriguez's new counsel Barry Wilson, not a
member of the district court bar, purports to
file an "appearance."

-25- 25

APPENDIX, continued

Dec. 1, 1993 Local counsel files appearance on behalf of
Barry Wilson.

Dec. 10, 1993 Barry Wilson files motion for admission pro 
hac vice. The government opposes the motion. 

Feb. 22, 1994 Hearing held on pro hac vice motion. The 
court allows the motion.

Feb. 22, 1994 Rodriguez files motion to dismiss indictment
for violation of Speedy Trial Act.

Apr. 28, 1994 Hearing held on motion to dismiss; the court
denies the motion.

May 12, 1994 Rodriguez's trial commences.

-26- 26